[Cite as *Sanzo Ents., L.L.C. v. Erie Ins. Exchange*, 2021-Ohio-4268.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| SANZO ENTERPRISES, LLC | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, J |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 21-CAE-06-0026 |
| ERIE INSURANCE EXCHANGE | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:  Civil appeal from the Delaware County
                          Court of Common Pleas, Case No. 20-CV-
                          H-07-0312

JUDGMENT:                 Affirmed

DATE OF JUDGMENT ENTRY:   December 7, 2021

APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee

DANIEL SCHLESSINGER                  KENNETH A. CALDERONE
30 South Wacker Drive, Suite 2200    3737 Embassy Parkway, Suite 100
Chicago, IL 60606                    Akron, OH 44333

For Amicus Curiae                    For Amicus Curiae Ohio Insurance Institute
American Property Cas. Ins. Assn.
DANIEL WOLFF                         TIMOTHY FITZGERALD
1001 Pennsylvania Ave. NW            1111 Superior Avenue, East, Ste. 2500
Washington, D.C. 20004               Cleveland, OH 44114

*Gwin, P.J.*

{¶1} Appellant appeals the April 30, 2021 judgment entry of the Delaware County Court of Common Pleas granting appellee's motion for judgment on the pleadings.

*Facts & Procedural History*

{¶2} Appellant Sanzo Enterprises, LLC, d/b/a Play it Again Sports, filed a complaint against Erie Indemnity Company a/k/a Erie Insurance Company on July 28, 2020. Subsequently, the parties filed a "stipulated substitution of party by interlineation," substituting appellee Erie Insurance Exchange as the defendant in the case.

{¶3} The following facts are contained in appellant's complaint.

{¶4} Appellant operates a store in Westerville that sells sports equipment and apparel. In March of 2020, the Governor declared a state of emergency due to the COVID-19 pandemic, and the Ohio Director of Health directed appellant, as a non-essential business, to "cease all activities within the State except minimum basic operations." Appellant depends, in part, on consumers selling their used sports equipment for resale. Due to the Executive Orders ("Orders"), customers were unable to bring their sporting goods to the store, causing inventory of used goods to run low. As a result of the Orders, appellant "suffered severe interruption to the business and critical loss of income."

{¶5} Appellant was insured by appellee's UltraPack Policy for the period of July 31, 2019 to July 31, 2020. Appellant paid all of the premiums due on the policy. The policy is an "all risk" insurance policy. Under the terms of the policy, appellee agreed to "pay for direct physical 'loss' of or damage to the Covered Property at the premises." The

policy contains an income protection provision, an extra expense provision, and a civil authority provision.

{¶6}   Appellant summarized its coverage as follows, "when a peril insured against – such as a global health crisis and governmental shutdown of Plaintiff's business – causes 'direct physical loss of or damage to' Plaintiff's property, Defendant is obligated to pay Plaintiff for its loss of income, and the extra expenses it incurs, during the time its business operations are interrupted."

{¶7}   Appellant made a claim on April 15, 2020 under the policy for losses suffered as a result of the Orders.  Appellee denied coverage on April 21, 2020, stating there was no "direct physical loss to [Plaintiff's] building or business personal property."

{¶8}   Appellant alleges in its complaint that it suffered "loss of" and "damage to" its property because appellant and its customers were separated from appellant's business, which greatly reduced appellant's business income.  Further, that the events "impaired the value of the business and prevented it from serving its normal function." Appellant further alleges its damages are "physical" because its employees and customers were unable to be physically present on the property, meaning appellant had been physically deprived of its business and property.  According to the complaint, "the global pandemic and Executive Orders caused Plaintiff to suffer direct physical loss of and damage to its property because the Executive Orders deprived Plaintiff and consumers of access to its buildings and prohibited Plaintiff from operating its business causing the function and value of Plaintiff's business property to be nearly eliminated or destroyed."

{¶9} Appellant's complaint includes four counts: (1) breach of contract, coverage of property damage claims; (2) breach of contract, civil authority claims; (3) declaratory judgment that the policy was triggered by direct physical loss and/or damage to Plaintiff's property and the property of others of others; and (4) bad faith.

{¶10} Attached to appellant's complaint is the insurance policy and the letter appellee sent to appellant denying coverage.

{¶11} Appellee filed an answer to appellant's complaint on August 26, 2020.

{¶12} Appellee filed a motion for judgment on the pleadings pursuant to Civil Rule 12(C) on October 20, 2020. Appellee argued that, even assuming the truth of the allegations in appellant's complaint, appellant's claims fail as a matter of law because: (1) the business-income and extra-coverage provisions in the policy only apply if the property sustains physical loss or damage, which, under Ohio law, requires a physical alteration of property adversely affecting its structural integrity and the complaint only alleges economic loss, not physical alteration of the property or loss of structural integrity; (2) the policy's civil authority coverage applies only when there is physical damage to property other than the insured's premises and appellant's complaint does not allege damage to property other than its premises, and does not allege any dangerous conditions or prohibited access, and (3) appellant's bad faith claim is meritless.

{¶13} Appellant filed a memorandum in opposition on November 3, 2020. Appellant argued the policy provides separate coverage if there is a "loss of property," and there was a "loss of property" when appellant was deprived of the normal use and functionality of its premises after the Orders shut down its business for two months.

{¶14} In its memorandum in opposition, appellant alleges that it attempted to operate its business curbside while the Orders were in effect, and the Health Department ordered appellant to stop those operations. In a footnote, appellant states, "Sanzo did not include this fact in its Complaint because it did not believe it necessary to plead every fact that supports its claim. Should the Court decide Sanzo may not prove facts that were not pleaded, Sanzo seeks leave to amend its complaint."

{¶15} Appellant also argued in its memorandum in opposition that it properly alleged coverage under the civil authority provision. In a footnote, appellant states, "should the Court find it necessary, Sanzo can amend its Complaint to allege the presence of COVID within one mile of Sanzo's premises. A Google Map search reveals several doctor's offices, a Walgreens, a medical supply store, grocery stores, hair and nail salons * * * within one mile of Sanzo's premises. Due to the widespread nature of the COVID pandemic, it is highly likely that many of those locations had COVID on their premises."

{¶16} Appellee filed a reply on November 10, 2020. Both parties filed notices of supplemental authority.

{¶17} The trial court issued a detailed judgment entry on April 30, 2021, granting appellee's motion for judgment on the pleadings.

{¶18} The court construed the words in the policy in accordance with their ordinary meanings, and found "direct physical loss of or damage to" the insured property means immediate, material, tangible harm to or deprivation of the insured property. The court further found that additional text in the policy supports the interpretation, such as: the extra-expense sub-section stating coverage is triggered by "loss" or "damage to property on the premises described in the Declarations from a peril insured against"; the period of

restoration coverage that provides appellee will "pay the cost to repair or replace your covered property and the amount to research, replace, or restore * * *"; the exclusion of "loss or damage caused directly or indirectly by the enforcement of or compliance with any law or ordinance regulating the construction, use, or repair of any property"; and the exclusion of "loss due to delay or loss of market" from income-protection coverage.

{¶19} The trial court also found that the case law applying Ohio law to similar insurance policies supports appellee's interpretation of the policy language, citing the Eighth District case of *Mastellone*, and citing cases from multiple federal courts in Ohio that rely on *Mastellone* when interpreting insurance policies under Ohio law to determine whether businesses are entitled to coverage as a result of COVID-19 pandemic orders.

{¶20} The trial court stated appellant has not alleged that the Orders caused any material, tangible, or structural harm to the store. The court determined that the Orders did not physically deprive appellant of access to its store; rather, it prohibited appellant from conducting its usual business during the time period. Further, none of the consequences of the Orders caused material or tangible harm to or deprivation of appellant's store and they only limited how appellant could utilize the store. Appellant maintained possession of the insured premises and appellant has not alleged that there were any material or tangible changes in the condition of the store.

{¶21} The trial court also found the lack of a virus exclusion in the policy unpersuasive to appellant's argument, noting that several courts have applied Ohio law to commercial insurance policies that contain a virus exclusion and have independently found that "direct physical loss of or damage to" insured property requires material, physical harm to the property.

{¶22} The trial court concluded appellant had not alleged sufficient facts to demonstrate it suffered the kind of tangible, material, or structural deprivation of or harm to its store that would trigger coverage under the policy for "direct physical loss of or damage to" the property; thus, appellee is entitled to judgment on appellant's claim for declaratory judgment and claim for breach of contract for coverage of loss of income or extra expense.

{¶23} Next, the trial court examined the civil authority provision of the policy, and held the civil authority provision was not triggered by the Orders. The trial court reasoned that, like in the loss of income or extra expense portion of the policy, the civil authority provision requires some tangible, material, or structural deprivation of or harm to the covered property. Further, that the policy does not apply because appellant has not alleged that the Orders were issued in response to dangerous structural, material, or tangible conditions at a nearby property and appellant has not alleged that the purpose of the Orders was to enable a civil authority to have access to one or more damaged properties. Finally, appellant does not allege that it, or the owners of the surrounding properties, were prohibited from accessing their properties or the areas surrounding them.

{¶24} Finally, the trial court determined appellee did not act in bad faith when it denied appellant's claim under the policy.

{¶25} Appellant appeals the April 30, 2021 judgment entry of the Delaware County Court of Common Pleas and assigns the following as error:

{¶26} "I. THE LOWER COURT ERRED IN GRANTING ERIE'S MOTION FOR JUDGMENT ON THE PLEADINGS ON THE ISSUES OF COVERAGE AND BAD FAITH DENIAL OF COVERAGE."

I.

*Motion for Judgment on the Pleadings*

{¶27} The trial court granted judgment on the pleadings for appellee and against appellant. Motions for judgment on the pleadings are governed by Civil Rule 12(C), which provides, "after the pleadings are closed but within some time as not to delay the trial, any party may move for judgment on the pleadings." Pursuant to Civil Rule 12(C), dismissal is only appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 664 N.E.2d 931 (1996).

{¶28} Our appellate standard of review on a Civil Rule 12(C) motion is de novo. *Columbus v. Sanders*, 5th Dist. Delaware No. 11 CAE 05 0047, 2012-Ohio-1514. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Kramer Installations Unlimited*, 147 Ohio App.3d 350, 770 N.E.2d 632 (5th Dist. 2002).

*Language in the Insurance Policy*

{¶29} The Ultrapack Plus Commercial Property Coverage Part ("Property Coverage Part") of the policy provides, "we will pay for direct physical 'loss' of or damage to Covered Property at the premises described in the 'Declarations' caused by or resulting from a peril insured against."

{¶30} There are three specific coverages contained in the policy at issue in this case, as appellant alleges its losses fell into three categories: income protection

coverage (coverage for lost income due to business interruption), extra-expense coverage (to avoid suspension of operations), and civil authority coverage (lost income and expenses due to a civil authority prohibiting access to appellant's premises).

{¶31}   Relevant portions of the policy state as follows:

**A. Income Protection Coverage**

Income protection means loss of 'income' and/or 'rental income' you sustain due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against.  'Loss' or damage also includes covered property in the open, or in a vehicle, on the premises described in the 'Declarations' or within 1,500 feet thereof.

**B.  Extra Expense Coverage**

'Extra expense' coverage is provided at the premises described in the 'Declarations.'

'Extra expense' means necessary expenses you incur due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against

* * *

**C.  Additional Coverages**

**1. Civil Authority**

When a peril insured against causes damage to property other than property at the premises described in the 'Declarations,' we will pay for the actual loss of 'income' and/or 'rental income' you sustain and necessary

'extra expense' caused by action of civil authority that prohibits access to the premises described in the 'Declarations' provided that both of the following apply:

a.  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the 'Declarations' are within that area but are not more than one mile from the damaged property; and

b. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

{¶32}  The three coverages are all premised on the occurrence of a "peril insured against."  With regard to "perils insured against," the policy provides, "this policy insures against direct physical 'loss', except 'loss' as excluded or limited in this policy."

{¶33}  On the main coverage form, the policy defines certain terms relevant to this case.  "Loss" is defined as "direct and accidental loss of or damage to covered property." Further, "interruption of business" is defined as follows:

Interruption of business means the period of time that your business is partially or totally suspended and it:

1. Begins with the date of direct "loss" to covered property caused by a peril insured against; and

2. Ends on the date when the covered property should be repaired, rebuilt, or replaced with reasonable speed and similar quality.

*Insurance Contracts*

{¶34} "The interpretation of an insurance contract involves a question of law." *Leber v. Smith*, 70 Ohio St.3d 548, 639 N.E.2d 1159 (1994). When reviewing a contract, this Court's primary role is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Co.*, 86 Ohio St.3d 270, 714 N.E.2d 898 (1999). A court "examine[s] the insurance contract as a whole and presume[s] that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. V. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1261 (2003). If a contract is "clear and ambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 652 N.E.2d 684 (1995).

{¶35} If a contract is ambiguous, a "court may consider extrinsic evidence to ascertain the parties' intent." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988). In the insurance context, "where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Id.*

{¶36} However, "when the language of any insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for [a] court to resort to construction of that language." *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St.3d 163, 462 N.E.2d 403 (1984). In construing a contract, a court must read and consider the provisions as a whole and not in isolation. *Foster Wheeler Enviresponse, Inc. v. Franklin Co. Convention Facilities Auth.*, 78 Ohio St.3d 353, 678 N.E.2d 519 (1997). Additionally, "courts should not interpret contract's in a way that renders at least one clause

superfluous or meaningless." *Transtar Electric, Inc. v. A.E.M. Electric Servs.*, 140 Ohio St.3d 193, 2014-Ohio-3095, 16 N.E.3d 645.

**{¶37}** This Court "must give undefined words in an insurance contract their plain and ordinary meaning." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 652 N.E.2d 684 (1995). The absence of definitions does not necessarily make terms ambiguous. *Id.*

**{¶38}** To establish a breach of contract in Ohio, "a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled its obligations, (3) the defendant failed to fulfill its obligations, and (4) damages resulted from this failure. *Moore v. Adams*, 5th Dist. Tuscarawas No. 2007AP090066, 2008-Ohio-5953.

*Income Protection / Extra Expense Provisions*

**{¶39}** Appellant first argues the trial court committed error in granting appellee's motion for judgment on the pleadings because the losses it alleges it suffered as a result of the COVID-19 pandemic triggers coverage under the income protection (lost income due to business interruption) and extra expense provisions of the policy because appellant suffered a "direct physical loss or damage." Appellee contends the loss based on forced closure was not "direct physical loss or damage."

**{¶40}** While the Ohio Supreme Court has not yet ruled on this issue, the Sixth Circuit and several district courts in Ohio have analyzed the issue pursuant to Ohio law. In *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021), the Sixth Circuit examined an insurance policy analogous to the one at issue in this case, in which the policy states it will pay for "direct physical loss of or damage to" the property. The Sixth Circuit rejected the plaintiff's argument that Ohio's shut-down orders constituted a direct

physical loss of or damage to property, and held the policy was not ambiguous and the phrase "direct physical loss of or damage to property" in a commercial insurance contract does not cover the loss of use of a property caused by COVID-19 shutdown orders. *Id.* The Court concluded that coverage for "direct physical loss" of "property" required showing that the insured had suffered tangible and concrete deprivation of the property itself. *Id.* Since the plaintiff-restaurant still had access to the physical property and could make use of the property, even when it could not be used for its intended purpose, the plaintiff could not demonstrate a loss of property under the policy. *Id.* The Sixth Circuit stated the shut-down orders, "did not create a direct physical loss of property or direct physical damage to it * * * a loss of use simply is not the same as a physical loss."

**{¶41}** In *Santo's*, the Sixth Circuit relied on a leading insurance treatise in its analysis. The treatise states that even "all-risk" policies cover only risks that lead to tangible and physical loss or damage, such as wind, fire, water, freezing, overheating, or vandalism. 10A Couch on Insurance (3d Ed. 1998) Section 148:3. The court additionally examined the plain language of the insurance policy, including the terms contained in the "period of restoration" portion of the policy. *Id.* The court gave undefined terms in the policy their ordinary meaning pursuant to a reputable dictionary. *Id.*

**{¶42}** Finally, the Sixth Circuit determined the Eighth District Court of Appeals' decision in *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, 884 N.E.2d 1130, supported its holding. *Id.* In *Mastellone*, there was a claim by two homeowners seeking insurance coverage for mold growth. *Id.* The policy covered a "direct loss to property only if that loss is a physical loss to property," which the court analogized to "physical injury." *Id.* In interpreting the policy by looking to the ordinary

definition of the words, the Eighth District looked to a treatise stating that a "physical loss" excludes a situation where the insured "merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Id.* The Eighth District concluded the policy did not cover mold growth because the mold could be cleaned using a bleach solution, and the siding was not structurally altered such that it needed replaced. *Id.* Accordingly, there was no physical loss to the property. *Id.* The Sixth Circuit found that *Mastellone* involved *some* physical change to the property, the mold; whereas there was no physical change to the plaintiff's restaurant property caused by the COVID-19 orders.

{¶43} While we agree with appellant that the facts and policy language in the *Mastellone* case are not exactly the same as in this case, we nonetheless find the Eighth District's analysis is persuasive, and bolsters the conclusion of the Sixth Circuit. The Sixth Circuit recognized that while *Mastellone* involved homeowners' insurance, it was still persuasive because it construed similar language, and because there is no affirmative authority under Ohio law to support a contrary position. 15 F.4th 398 (6th Cir. 2021),

{¶44} The Sixth Circuit reaffirmed its *Santo's* holding in *Dakota Girls, LLC v. Philadelphia Indemnity Ins. Co.*, 6th Cir. No. 21-3245, 2021 WL 5144465 (Nov. 5, 2021) and further held that the plaintiff's allegation that COVID itself was "damaging surfaces" did not prevent dismissal of the case, particularly where the complaint did not allege that anyone with COVID was ever on the covered premises. See also *Equity Planning Corp. v. Westfield Ins. Co.*, 522 F.Sup.3d 308 (N.D. Ohio 2021) (holding plaintiff fails to meet threshold for coverage for business loss due to COVID-19 orders because plaintiff failed to allege any physical deprivation of the property); *MIKMAR, Inc. v. Westfield Ins. Co.*,

520 F.Supp.3d 933 (N.D. Ohio) (finding no coverage for loss due to COVID-19 orders because plaintiff was not physically, tangibly, or materially deprived of their property and therefore didn't suffer a physical loss); *Troy Stacy Enterprises v. Cincinnati Ins. Co.*, S.D. Ohio No. 1:20-cv-312, 2021 WL 4346688 (Sept. 24, 2021) (because neither the presence of COVID in the insured property nor the government closure orders constitutes direct physical damage or loss, the motion to dismiss is granted); *Ceres Enterprises v. Travelers Ins. Co.*, 520 F.Supp.3d 949 (N.D. Ohio 2021); *Brunswick Panini's LLC v. Zurich American Ins. Co.*, 520 F.Supp.3d 965 (N.D. Ohio 2021) ("the plain meaning of the policy mandates the conclusion that there is no coverage for plaintiff's claimed business losses or damages because there was no direct physical loss of or damage to their property"); *Torre Rossa, LLC v. Liberty Mut. Ins. Co.*, N.D. Ohio No. 1:20CV1095 (Sept. 30, 2021) (holding that neither the shut down orders nor physical presence of COVID particles constitutes direct physical loss of or damage to property); *Bridal Expressions LLC v. Owners Ins. Co.*, 528 F.Supp.3d 775 (N.D. Ohio 2021) (stating that "equating loss of intended use of the property with physical loss of property would result in unreasonable interpretation of the words of the policy").

{¶45} While appellant argues this Court is not bound by the Sixth Circuit's rulings, we find the detailed analysis by the Sixth Circuit and the other district courts applying Ohio law are well-reasoned and persuasive.  The Sixth Circuit relied on dictionaries, a leading treatise, COVID-19-related case law, and Ohio intermediate appellate court law to reach its conclusion, after completing a thorough analysis.

{¶46} The primary case cited by appellant, *Henderson Road Restaurant Systems, Inc.  v. Zurich American Ins. Co.*, 513 F.Supp.3d 808 (N.D. Ohio 2021), an Ohio district

court case, was vacated and remanded by the Sixth Circuit. *In re: Zurich American Ins. Co.*, 6th Cir. No. 21-0302, 2021 WL 4473398 (Sept., 29, 2021).

**{¶47}** Upon remand and pursuant to *Santo's*, the district court held that coverage for "direct physical loss of property" only applies to physical property, not the loss of the use of the property for its original purpose. *Henderson Road Restaurant Systems, Inc. v. Zurich American Ins. Co.,* N.D. Ohio No. 1:20-CV-1239, 2021 WL 5085283 (Nov. 2, 2021). The district court granted judgment to the insurance company, finding the plaintiff's premises were not damaged or altered in any way by COVID-19 and plaintiff was not required to make any improvements or alterations to the premises in order to resume operations. *Id.*

**{¶48}** The remainder of the cases cited by appellant are either out-of-state cases, or cases from Ohio courts of common pleas, and involve analysis that this Court finds less persuasive than that of the Sixth Circuit. Additionally, several of the out-of-state district court opinions cited by appellant have essentially been overruled by the rulings in the Fourth, Eighth, Ninth, and Eleventh Circuits.

**{¶49}** The Fourth Circuit examined a policy that contained the language "direct physical loss of or damage to property" in *The Inns by the Sea v. California Mut. Ins. Co.*, 4th Cir. No. D079036, 2021 WL 5298480 (Nov. 15, 2021). The plaintiff in the case argued that the presence of COVID constitutes damage because the virus' physical presence transforms property from a safe condition to a dangerous condition unsafe and unfit for its intended purpose. *Id.* The Fourth Circuit rejected this argument. Rather, the court held that even though the plaintiff alleged COVID was on its premises, it did not identify any physical damage to the property that caused the suspension of operations. *Id.* The

court held that the plaintiff did not allege physical loss of property when it lost the ability to use its physical property to generate income. *Id.*

{¶50} In *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021), the Eighth Circuit rejected the argument that the loss of use or function constitutes direct physical loss or damage, because such an interpretation would allow coverage to be established whenever property cannot be used for its intended purpose. In *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.,* 11th Cir. No. 21-11046, 2021 WL 3870697 (Aug. 31, 2021), the Eleventh Circuit held that the presence of COVID-19 particles does not cause physical damage or loss to the property. Similarly, the Ninth Circuit held that the phrase "direct physical loss of or damage to" property requires that the insured allege physical alteration of the property. *Mudpie, Inc.* v. *Travelers Cas. Ins. Co. of America*, 15 F. 4th 885 (9th Cir. 2021); *Selane Prods., Inc. v. Continental Cas. Co.*, 9th Cir. No. 21-55123, 2021 WL 4496471 (Oct. 1, 2021).

*Application to the Instant Case*

{¶51} In this case, the policy provides that appellee will pay for "direct physical 'loss' of or damage to" the property "caused by or resulting from a peril insured against." The income protection portion of the policy provides coverage for "loss of income" sustained due to partial or total "interruption of business" resulting directly from "loss or damage to property" from a peril insured against. The extra expense provision covers necessary expenses incurred "due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises "from a peril insured against." Accordingly, this case turns on whether appellant can show "direct physical loss of or damage to" its insured property.

{¶52} Appellant argues the policy provides two distinct and alternative bases for business interruption coverage: (1) physical loss of property or (2) physical damage to property. Appellant believes that since it was deprived of its ability to fully access the property and use the property for its business operations, there was a "physical loss" of the property. Appellant contends the distinction between "loss of" property and "damage to" property demonstrates physical alteration of the property is not necessary, and, because an ambiguous contract interpretation must be construed in favor of the insured, judgment on the pleadings is not appropriate.

{¶53} We disagree with appellant. We find the policy language is not ambiguous, and appellant's interpretation of the phrase "physical loss of property" to include loss of the ability to make "full use" of the property is not within the ordinary and plain meaning of the terms in the policy.

{¶54} The policy does not define the phrase "direct physical loss of or damage to" property. However, as noted above, simply because this phrase is undefined does not mean the policy language is ambiguous. Rather, we must give these words their common and ordinary meaning. "Direct" means "effected or existing without intermediation or intervening agency; immediate." Oxford English Dictionary Online (3d ed. 2021). "Physical" means "natural; tangible; concrete." *Id.* "Loss" is defined as "perdition, ruin, destruction; the condition or fact of being 'lost, destroyed, or ruined,' or being deprived of." *Id.* Giving effect to all the terms in the phrase, we find the term "loss" is modified by the terms "direct" and "physical." Accordingly, when read together, the plain and ordinary meaning of the phrase "direct physical loss of or damage to" unambiguously requires a tangible and structural damage to the property.

{¶55} We find appellant fails to plausibly allege a threshold claim of "direct physical loss of or damage to" its insured premises; therefore, appellant's claim for business interruption coverage pursuant to the income protection and extra income provisions fails. The store was not tangibly destroyed, whether in part or in full. The owner was not tangibly or concretely deprived of any of it, and the property exists in the same state as it did before the Orders. Appellant still owns the store and everything inside the space, and it can still put every square foot of the premises to use. The Orders did not create a direct physical loss of property or direct physical damage to it. The loss of use is not a physical loss.

{¶56} Accepting the factual allegations in the complaint as true, appellant fails to plead any physical alteration of its insured property. Accordingly, appellant cannot establish the "loss" or "damage" required to trigger the income protection or extra expense coverage. We reach this conclusion based upon the plain language of the policy, the ordinary and plain meaning of the undefined phrases in the policy, persuasive Ohio appellate case law, and persuasive case law from the Sixth Circuit and other circuit courts. As stated by one district court, "as unfortunate as plaintiff's COVID-19-related business losses are, their preferred construction of their insurance contract simply cannot contend with the plain and ordinary meaning" of the policy. *Troy Stacy Enterprises v. Cincinnati Ins. Co.*, S.D. Ohio No. 1:20-cv-312, 2021 WL 4346688 (Sept. 24, 2021)

{¶57} Other language in the policy also bolsters the interpretation that the policy contemplates some sort of tangible and structural alteration of the property.

{¶58} Both the income protection and extra expense provisions require "interruption of business." The definition of the phrase "interruption of business" contains

the following phrase, "ends on the date when the covered property should be repaired, rebuilt, or replaced with reasonable speed and similar quality." Additionally, appellee promised to pay for lost business income and extra expenses only during the "period of restoration." The policy provides that appellee will "pay the cost to repair or replace your covered property and the amount to repair, replace, or restore * * *."

{¶59} The use of the words "repair, rebuild, restore, and replace" in both the "period of restoration" provision and definition of "interruption of business" supports the determination that a mere loss of use, without any physical or tangible impact to the property, is not sufficient to trigger the income protection or extra expense coverage. The use of these words implies the "loss" or "damage" that triggers the income protection or extra expense coverage has a physical component such that it can be physically fixed or moved to a new location. An intangible loss cannot be repaired, rebuilt, restored, or replaced.

{¶60} Appellant did not allege in its complaint that COVID-19 was on its premises. Even if appellant had alleged the presence of COVID-19 on the premises, the presence of it did not cause the damage to the property such that repair, rebuilding, or restoration was necessary. What the store needed was the end of the Orders, not any repair, rebuilding, replacement, or restoration of the property.

{¶61} Appellant finally contends the absence of a virus exclusion in the policy makes this case different from those cited by appellees. However, as noted by the trial court, several courts who have applied Ohio law to commercial insurance policies that contain a virus exclusion, including the Sixth Circuit, have independently found that "direct physical loss of or damage to" insured property requires material, physical, and tangible

harm to the property. *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645 (6th Cir. 2021) ("because Dakota Girls never established its initial entitlement to coverage, we need not consider what consequences for that coverage might have arisen from the virus exclusion"). We agree with the trial court that the absence of a virus exclusion in the policy does not impact the meaning of the phrase "direct physical loss of or damage to property." Because appellant cannot establish its initial entitlement to coverage, we need not consider the impact of the lack of a virus exclusion.

*Civil Authority Provision*

{¶62} Appellant contends the trial court committed error in granting appellee's motion for judgment on the pleadings because the losses alleged in the complaint are covered by the civil authority provision of the policy. We disagree with appellant.

{¶63} We find appellant is not entitled to civil authority coverage based upon the plain and ordinary meaning of the policy language. A "peril insured against" means "direct physical loss except 'loss' as excluded or limited in this policy." Availability of civil authority coverage turns on the meaning of the undefined phrase "direct physical loss." Because the civil authority coverage also depends on the meaning of the phrase "direct physical loss," the above analysis applies here as well. As discussed above, COVID-19-related economic loss is not direct physical loss. Further, the Orders were issued to prevent the spread of the virus, not due to any direct physical loss or damage to property. Courts interpreting civil authority coverage in the COVID-19-loss context require a close causal nexus between the civil order and the physical damage. *Equity Planning Corp. v. Westfield Ins. Co.*, 522 F.Supp.3d 308 (N.D. Ohio 2021) (finding no coverage when the policy had the same language in the civil authority provision as in this case). In this case,

appellant has not alleged the Orders were issued in response to dangerous structural, material, or tangible conditions; rather, the Orders were designed to prevent spread of the virus.

{¶64} Appellant also contends the trial court should not have granted appellee's motion for judgment on the pleadings because it attempted to operate its operations curbside, but the Health Department specifically ordered it to stop; thus, "access to the area immediately surrounding the damaged property is prohibited." However, appellant did not allege these facts in its complaint. Appellant states it requested leave to amend its complaint to include these facts. This request for leave to amend was contained in a footnote in appellant's memorandum in opposition to appellee's motion for judgment on the pleadings. We question whether this request constitutes an appropriate motion for leave to amend the complaint.

{¶65} The trial court did not separately rule on what appellant characterizes as a "request for leave to amend." "If a trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled." *Theimens v. Grange Mut. Cas. Co.,* 5th Dist. Ashland No. 12-COA-027, 2013-Ohio-1643. Appellant did not separately include or separately assign the denial of their "request for leave to amend" as error as required by Appellate Rule 16. Thus, we may disregard this argument pursuant to Appellate Rule 12(A)(2). *In re Estate of DeChellis*, 5th Dist. Stark No. 2020CA00081, 2020-Ohio-5631.

{¶66} Even if we consider this argument, we find the trial court did not commit error in granting appellee's motion. The civil authority provision requires a "peril insured against" cause "damage to property" other than appellant's property. Thus, the denial of

curbside access does not fit within civil authority coverage because it is not property "other than the property at the premises described in the Declarations." Further, specifically as to curbside business, the Order did not prohibit all access to the store or other businesses.

**{¶67}** Appellant also contends it should have been allowed discovery as to whether COVID was present on the premises in one of the numerous high-traffic locations within one mile of appellant's store. However, appellant did not allege these facts in its complaint. Appellant argues it requested leave to amend its complaint to assert that COVID was present within one mile of appellant's premises because a Google Map search reveals several doctor's offices, grocery stores, drug stores, and other high-traffic stores within one mile of appellant's premises and, due to the widespread nature of COVID, it is highly likely that many of those locations had COVID on their premises. However, this "request for leave to amend" was contained in a footnote of appellant's memorandum in opposition to appellee's motion for judgment on the pleadings.

**{¶68}** We again question whether this request constitutes an appropriate motion for leave to amend the complaint. The trial court did not rule on this request, and thus it is implicitly overruled. Appellant did not separately include or separately assign the denial of their "request for leave to amend" as error as required by Appellate Rule 16. Thus, we may disregard this argument pursuant to Appellate Rule 12(A)(2). *In re Estate of DeChellis*, 5th Dist. Stark No. 2020CA00081, 2020-Ohio-5631.

**{¶69}** However, even if we consider this argument, we find these additional facts do not change the analysis. While appellant alleges that nearby businesses were "shut down," there is no allegation that any of these businesses did not remain physically intact. Additionally, even in its additional facts, appellant does not identify any particular property

that was "damaged" as the term is defined in the policy.  Appellant fails to specify how the virus supposedly altered the property.  Further, even if the complaint were amended, these additional facts do not solve the fundamental problem that the Orders were issued to prevent the spread of the virus, not in response to any direct physical loss or damage.

{¶70}  We find the trial court did not commit error in finding appellant pled no viable claim for civil authority coverage under the policy.

*Bad Faith*

{¶71}  Appellant argues the trial court erred in granting appellee's motion for judgment on the pleadings on the issue of bad faith.

{¶72}  It is well-established that an allegation of bad faith made against an insurer for its handling a claim for coverage will survive only if the record shows that there were no circumstances in the case which could be viewed as creating a reasonable justification for that carrier's actions.  *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994).  Even if a denial of coverage had been erroneous, the mere wrongful denial of a claim is not actionable under Ohio law.  "An insured must prove that the insurer's refusal to pay a claim was totally arbitrary and capricious and without reasonable justification."  *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983).

{¶73}  In this case, no amount of discovery would change the fact that appellee had a reasonable justification for determining that there was no coverage, as numerous other courts agreed with appellee's arguments.  Because we found that appellant did not plausibly allege claims that meet the threshold to trigger coverage under the policy, the denial of coverage was reasonable.  Thus, the trial court's granting of appellee's motion for judgment on the pleadings with regards to appellant's bad faith claim is not in error.

*Stay*

{¶74} At the conclusion of its brief, appellant states that, in the alternative to reversing the trial court's decision, this Court should stay the matter pending a ruling by the Ohio Supreme Court in *Neuro-Communication Servs., Inc. v. Cincinnati Ins. Co.*, N.D. Ohio No. 4:20-cv-01275, 2021 WL 274318 (Jan. 19, 2021). In that case, the district court certified the following question to the Ohio Supreme Court: "Does the general presence in the community, or on surfaces at a premises, of the novel coronavirus known as SARS-CoV-2, constitute direct physical loss or damage to property; or does the presence on a premises of a person infected with COVID-19 constitute direct physical loss or damage to property at that premises?"

{¶75} While the *Neuro-Communication* case may impact the instant case, it is not set for oral argument until February of 2022. Accordingly, we decline to stay the instant case.

*Conclusion*

{¶76} Based on the foregoing, we find appellant has not alleged sufficient facts to demonstrate it suffered the kind of tangible, material, or structural deprivation or harm to its store that triggers coverage under the policy for "direct physical loss or damage" to the property. Appellant failed to plead facts to establish the plausibility that appellee breached its duty in the contract by refusing to cover the loss of use of the property due to the Orders. Accordingly, appellee is entitled to judgment on the pleadings on appellant's claim for breach of contract for coverage of loss of income, coverage for extra expenses, and coverage pursuant to the civil authority provision.

{¶77} Appellant also seeks declaratory judgment that states the income protection and civil authority provisions of the policy were triggered by "direct physical loss of and damage to" appellant's property and the surrounding property, and no exclusions apply. Pursuant to the above-analysis, we find appellee is entitled to judgment on the pleadings on appellant's declaratory judgment claim.

{¶78} Finally, because we found that appellant did not plausibly allege claims that meet the threshold to trigger coverage under the policy, the denial of coverage by appellee was reasonable. Thus, appellee is entitled to judgment on the pleadings with respect to appellant's bad faith claim.

{¶79} Appellant's assignment of error is overruled.

{¶80} The April 30, 2021 judgment entry of the Delaware County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur