[Cite as *United Dairy Farmers, Inc. v. Value Dev. Corp.*, 2023-Ohio-4232.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| UNITED DAIRY FARMERS, INC. | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| Appellant-Cross Appellee | : | Hon. Andrew J. King, J. |
| | : | |
| -vs- | : | |
| | : | Case Nos. 2023-CA-00007 |
| VALUE DEVELOPMENT | : | 2023-CA-00020 |
| CORPORATION, ET AL | : | |
| | : | |
| Appellees-Cross Appellants | : | OPINION |

CHARACTER OF PROCEEDING:   Civil appeal from the Fairfield County Court of Common Pleas, Case No. 2022-CV-00011

JUDGMENT:   Affirmed

DATE OF JUDGMENT ENTRY:   November 21, 2023

APPEARANCES:

For: UDF

STEVEN C. COFFARO
STEPHANIE M. SCOTT
One East Fourth St., Ste. 1400
Cincinnati, OH 45202

For: Value Development

JOSEPH R. MILLER
JOHN M. KUHL
ELIZABETH S. ALEXANDER
MUNA ABDALLAH
52 East Gay Street, Box 1008
Columbus, OH  43216-1008

*Gwin, P.J.*

{¶1}   Both parties appeal the judgment entries of the Fairfield County Court of Common Pleas.

*Facts & Procedural History*

{¶2}   On January 13, 2022, Value Development Corporation, Basic Industries Group Corporation, and Rocco Sabatino, Trustee of the Rocco Sabatino Revocable Trust (collectively "Value Development") filed a complaint against United Dairy Farmers ("UDF").   The complaint sought a declaratory judgment, preliminary and permanent injunctions, and damages, and includes the following counts:   Count One, seeking a declaratory judgment that UDF defaulted with respect to its duties and obligations under the Agreement by failing to release the deposit to Value Development; (2) Count Two, breach of the Agreement by failing to consummate the Agreement and take title to a portion of the property as set forth in the Agreement and by refusing to release the deposit to Value Development; (3) Count Three, seeking a declaratory judgment that UDF has no interest in the property and no right to specific performance; (4) Count Four, seeking a preliminary and permanent injunction prohibiting UDF from taking any action to claim it has interest in the property or seek specific performance of the Agreement; and (5) Count Five, recovery of attorneys' fees pursuant to paragraph 17.2 of the Agreement.

{¶3}   UDF filed an answer and counterclaims on February 15, 2022.   UDF's counterclaims are as follows:   Count 1, breach of contract and request for an order of specific performance directing Value Development to close on the sale of the property to UDF, and Count 2, breach of implied covenant of good faith and fair dealing.

{¶4} In July of 2022, UDF filed a motion for summary judgment against Value Development for its counterclaims. The trial court issued a judgment entry on August 1, 2022, denying UDF's motion for summary judgment. The trial court found there were genuine issues of material fact that should be left to the fact-finder to resolve because there were inconsistencies and ambiguities concerning the expiration date of the inspection period, the closing deadline, and the finalization of the cut-up documents. Further, the trial court found that in order to resolve the questions or ambiguities, the court would have to assess and evaluate the parties' credibility, which is inappropriate for summary judgment.

{¶5} The magistrate conducted a two-day bench trial on August 2 and August 3 of 2022. The following facts are adduced from the bench trial.

{¶6} Value Development owns three contiguous parcels of real estate in Fairfield County, totaling approximately 3.8 acres. The property is vacant except for a 6,000 square foot barn. The property is bounded on the west by Milnor Road (running north/south) and to the south by Refugee Road (running east/west).

{¶7} Value Development and UDF entered into a real estate contract ("Agreement") on April 30, 2021. The Agreement was drafted by UDF's attorney. Pursuant to the Agreement, UDF agreed to purchase 1.97 acres of land, to be cut-up and re-platted from the 3.82 acre "Mother Tract" of property, for a purchase price of $700,000 per acre. UDF also agreed to purchase an access easement from Value Development for $350,000 per acre. UDF was required to make a $10,000 earnest money deposit into escrow.

**{¶8}** The Agreement required the parties to "mutually agree (in their reasonable discretion) on the Plat of Survey and legal descriptions for the cut-up of the Mother Tract into two (2) or more standalone parcels." Value Development was responsible for the costs associated with the preparation and recording of the cut-up documents. It is undisputed that UDF took responsibility for the preparation of the cut-up documents, and Value Development agreed to pay the $2,500 required to obtain these documents. Pursuant to the Agreement, "the parties agree[d] that the Closing is contingent upon the cut-up of the Property."

**{¶9}** The Agreement provided for an inspection period to allow UDF to inspect the property and satisfy certain contingencies under the Agreement, including obtaining certain "Approvals." UDF's obligation to close was contingent upon obtaining these "Approvals" during the inspection period, which included utilities, zoning permits, and access, points, specifically, "full service, curb cut to Refugee Road three-way curb to Milnor Road." Value Development was required to "fully cooperate with [UDF] * * * in every respect with regard to securing the Approvals of the Property." Upon the expiration of the inspection periods, all contingencies, including, but not limited to, any "Approvals," were deemed satisfied.

**{¶10}** There were two phases to the inspection period. The "Initial Inspection Period" was ninety (90) days, commencing upon the Effective Date of this Contract (provided that if it takes more than sixty (60) days to complete the Cut-Up documents, [UDF] shall have a day-for-day extension of the Initial Inspection Period." UDF was also allowed to exercise an additional 30-day Inspection Period upon payment of an additional deposit of $5,000, which was called the "Extended Inspection Period."

**{¶11}**   Closing was to occur on or before thirty days after the satisfaction or waiver of all contingencies described in the Agreement, and not later than one hundred fifty (150) days after April 30, 2021.

**{¶12}**  The Agreement contained two specific provisions stating the remedies if either party failed to close.  Section 6.1, entitled "Failure to Close by Purchaser," states as follows:

> In the event that Seller is ready, willing, and able to convey the Property in accordance with this Contract, and Purchaser is obligated under the terms of this Contract to consummate the transaction evidenced by this Contract but fails to consummate this Contract and take title, then the parties hereto recognize and agree that the damages that Seller will sustain as a result thereof will be substantial, but difficult if not impossible to ascertain. Therefore, the parties agree that, in the event of Purchaser's default, Seller shall retain the Deposit paid by Purchaser * * *as liquidated damages for such failure to close, except for any indemnification obligations of Purchaser hereunder.  Seller's right to retain the Deposit as provided in this Contract shall constitute the waiver by Seller of all other rights and remedies against Purchaser, and Purchaser shall be relieved of all other liability to Seller of any nature whatsoever, except for any indemnification obligations of Purchaser hereunder.

**{¶13}**  Section 6.2, entitled "Failure to Close by Seller," provides:

> If the closing is not concluded at no fault of Purchaser, Purchaser, at its option, (a) may elect to enforce the terms hereof by action for specific

performance, and/or exercise any other right or remedy available to it at law or in equity, or (b) may terminate this Contract by notice to Seller, and agrees to reimburse Purchaser under this Contract during the Inspection Period in connection with its inspection of the Property, up to a maximum of $15,000, and the parties shall have no further rights and obligations hereunder other than those rights and/or obligations hereunder other than those rights and/or obligations which are expressly stated to survive expiration or termination of this contract.

{¶14}  On June 21, 2021, UDF requested an extension to obtain a title commitment and survey.  Value Development agreed, and the parties executed the "First Amendment" to the Agreement.  UDF requested a second extension, and Value Development again agreed.  The "Second Amendment" was signed on August 27, 2021, extending the "Inspection Period" an additional period of thirty days, until September 27, 2021.

{¶15}  UDF requested a third extension, entitled the "Third Amendment."  The "Third Amendment" was signed on September 28, 2021, and stated it was necessary in order to "(i) obtain the necessary Approvals as provided for under Section 5 of the Initial Contract; (ii) finalize the Cut-Up Documents; and (iii) mutually agree to the form of the Declaration."  The Third Amendment provided a further extension of the "Extended Inspection Period" for sixty days, providing an expiration date of November 26, 2021.  Further, closing was to occur, "on or before thirty (30) days after the expiration of the Inspection Period."  The Third Amendment stated that any of the initial contract terms not specifically modified or amended remained in full force and effect.

{¶16} The parties did not execute any further extensions after the Third Amendment.  Neither the Cut-up documents, nor the Easement Declaration, were finalized, mutually agreed upon, or recorded on or before December 27, 2021.  Neither party exchanged or provided any of the closing documents or payments as outlined in the initial contract.

{¶17}  The magistrate heard testimony from the following witnesses:  Jeremiah Upp, the Fairfield County Engineer, Tim Kling, the Director of Real Estate for UDF, Mike Hobbs, a civil engineer employed at GPD Group, Rocco Sabatino, the owner and president of Value Development, and Jody Klekamp, an attorney for UDF.

{¶18}  Jeremiah Upp ("Upp"), the Fairfield County Engineer, testified that his office reviews lot splits or "cut ups" of property.  Physical documents required for a lot split include a stamped survey and legal descriptions of the properties.  Upp stated a traffic study is not required for a lot split and a traffic study does not have any impact on his office's review of a lot split.  Further, his office reviews lot splits separate from reviewing traffic studies.  County roads such as Refugee Road and Milnor Road are also under Upp's jurisdiction.  If there is a change of use, such as building a store on vacant land, his office would "likely instruct the developer to provide a Traffic Impact Study outlining what the impacts of their development are on the road and their access configuration as to the road."  UDF submitted a traffic study in late winter or early spring of 2022, and it is still sitting in his office.  Upp started reviewing it and had some disagreements with it, then found out this lawsuit had been filed.

{¶19}  Tim Kling, Director of Real Estate for UDF, testified extensively.  Kling is not aware of any legal requirement in Fairfield County that requires a traffic study be done

prior to preparing a lot split. Kling confirmed that, in regard to preparation of the cut-up documents, four days after the initial contract was executed, UDF's engineers sent Sabatino an e-mail stating they would like UDF's engineers to prepare the cut-up documents, and Sabatino agreed, stating "please proceed." An e-mail provided to Sabatino stated that UDF's engineers "will prepare a boundary survey map and legal description per the Ohio Revised Code statute and the county transfer conveyance for the proposed lot split." Kling stated Value Development agreed to UDF's proposal that UDF engineers prepare the cut-up documents at Value Development's cost. This delegation as to who was going to prepare the cut-up documents never changed from May 10, 2021 to December 27, 2021.

{¶20} On August 27, 2021, UDF unilaterally decided to hold off on the preparation of the cut-up documents. Kling testified that the traffic study was not what was needed to finalize the cut-up documents. Rather, UDF needed to ensure they had proper access as a result of the proposed lot split, which UDF felt they did not have in August. Kling confirmed that UDF and/or its engineers did not prepare a plat of survey or legal descriptions by December 27, 2021 as to the cut-up, and, as of the date of the trial, neither the plat or legal descriptions had been submitted to the Fairfield County Engineer. Kling also agreed that, based on his experience in the real estate industry, property cannot be conveyed without a legal description, and an easement cannot be finalized without a plat survey and a legal description. Kling testified UDF could not submit the plat survey because they did not have Sabatino's permission to do so. In 2022, UDF unilaterally submitted the traffic study to Fairfield County.

**{¶21}** Between May and June, the parties were working diligently to work out issues with zoning and traffic. Though it may not have been a legal requirement, Kling felt final access approval via the traffic study was required so the parties could make a final determination as to whether they could reasonably agree to the cut-up.

**{¶22}** Mike Hobbs is a civil engineer from the GPD group who worked on the traffic study. He testified to multiple e-mails between himself and the parties. Hobbs stated the parties were working cooperatively in September and October on the study. In November of 2021, Hobbs sent Value Development the finalized traffic study. Hobbs then sent Sabatino a paper copy at the end of the November because Sabatino could not open the document on this computer. UDF sent Hobbs an e-mail on November 26, 2021, stating it approved the submission of the traffic study. Sabatino e-mailed Hobbs on December 1 and December 10 to provide his comments and concerns about the traffic study. Hobbs did not believe the changes Sabatino wanted were feasible within the confines of the traffic study as it existed on November 26, 2021. Hobbs contacted Sabatino several times in December for his approval of the traffic study, but Sabatino did not approve the traffic study. Hobbs submitted the traffic study to the county in January of 2022 at the direction of UDF without Sabatino's approval.

**{¶23}** Rocco Sabatino ("Sabatino") is the owner and president of Value Development. Sabatino stated it was important to him the Agreement have a firm closing date due to his age and health. As to the lot split, Sabatino testified that, early on, he informed UDF's engineers it was important that Sabatino had two remainder parcels as a result of the lot split. With regard to the cut-up documents, Sabatino stated he forwarded the easement and covenant agreement to UDF because UDF was going to prepare the

legal description. Sabatino testified UDF did not tell him in August that the cut-up document preparation had been placed on hold, and UDF's engineers never communicated to him that they needed more information for the cut-up documents.

**{¶24}** Sabatino stated the Third Amendment provided a firm closing date of December 27, 2021. Sabatino's understanding was that the drop-dead closing date was December 27, 2021, and either the parties closed that day or the contract expired.

**{¶25}** When the parties first discussed the traffic study in May of 2021, Sabatino believed the parties were on the same page. Sabatino believed UDF's engineers were going to make the corrections he sought, and then UDF would execute the official plats and legal descriptions. Sabatino received the finalized traffic study on November 30, 2021. However, Sabatino believed UDF did not make the corrections he sought to alleviate his concerns. He had concerns about the traffic study because the study only referenced a single residual property, but there were really two residual properties remaining. When UDF asked Sabatino to support the traffic study, he felt he could not support it because it was not truthful and did not accurately depict the existing conditions.

**{¶26}** On November 22, 2021, Sabatino had preliminary discussions with the Scheetz Gas Corporation about buying the property for a price that was significantly more than the contract with UDF. He did not inform Scheetz about the contract with UDF.

**{¶27}** The magistrate issued a decision on August 25, 2022. The decision contained numerous findings of fact as to the initial Agreement and the Third Amendment. The decision also contained multiple conclusions of law, including the following: both parties failed to perform under the initial contract, as amended by the Third Amendment; although neither party fully performed under the contract, both parties proceeded towards

closing in good faith, thereby fulfilling their implied duties of good faith and fair dealing; the time to close on the Property expired on December 27, 2021; Value Development did not prepare, complete, or finalize the cut-up documents by December 27, 2021; UDF did not agree, prepare, complete, or finalize the cut-up documents by December 27, 2021; throughout the entirety of the contract period, both parties were at fault for causing delays, failing to clearly communicate with each other and their respective contractors, and neglecting to follow-up or take the initiative on certain aspects of the project; Value Development was not obligated to consent to any further extensions; the initial contract, as amended by the Third Amendment, expired on its own terms; "when the time for performance under the contract has expired and neither party has yet tendered performance, each party would then be discharged since the condition necessary to trigger each party's performance – the other party's performance or tender of performance within the time set by the contract – can no longer occur"; Value Development is not entitled to retain the deposit because they were not ready, willing, and able to convey the property at closing; UDF is not entitled to specific performance because "the court cannot find that closing failed to occur 'at no fault of [UDF]'"; and UDF is entitled to a return of its deposit because the contract expired on its own terms after both parties failed to perform.

{¶28} The magistrate rendered judgment in favor of Value Development on Count III on its complaint, for declaratory judgment as to the interest in the property, and also in favor of Value Development on Counts I and II of UDF's counterclaims for specific performance and breach of contract. The magistrate rendered judgment in favor of UDF

on Counts I and II of Value Development's complaint for breach of contract and declaratory judgment for breach of contract.

{¶29} UDF filed objections to the magistrate's decision.  UDF argued: (1) the conclusion that closing was required to occur by a fixed deadline of December 27, 2021 was in error and (2) the magistrate incorrectly determined that Value Development's obligation to "fully cooperate" with UDF's efforts to obtain the approvals to develop the property was extinguished before the closing deadline.

{¶30}  The trial court issued a judgment entry on January 9, 2023.  The trial court found the magistrate's analysis and legal conclusions set forth in the August 25, 2022 decision are fully supported by the findings of fact.  The trial court overruled UDF's objections and adopted the magistrate's decision in full, and referred the matter back to the magistrate to determine the issue of attorneys' fee and costs.

{¶31}  Both parties requested attorney's fees pursuant to the Agreement.  The magistrate held a hearing on attorneys' fees on April 4, 2023.  Both parties argued their positions, and both presented evidence as to the reasonableness fees they sought.

{¶32}  The magistrate issued a decision regarding the motions for attorneys' fees and costs.  The magistrate found Value Development was the "prevailing party" in the dispute.  However, the magistrate found the Agreement does not permit the recovery of attorneys' fees and costs for a declaratory judgment.  The magistrate stated the language of Section 17.2 of the Agreement was unambiguous, and that Section 17.2 "says nothing about a declaratory judgment – an action brought to interpret the terms of the contract." The magistrate noted that the parties could have chosen to employ different wording if the parties wished to include an action to interpret the terms of the contract.

{¶33} Next, the magistrate found that UDF was not a "prevailing party" as contemplated by Section 17.2 of the contract because, even though UDF prevailed on certain causes of action, UDF did not obtain substantially the relief it sought, i.e., specific performance of the contract. In paragraph 14 of the magistrate's entry, the magistrate "noted" that the evidence presented by the parties is not distinguished by count or cause of action and that, even if the contract were read to provide for the awarding of fees and costs, it would be "impossible for the Court to make such a determination at this point."

{¶34} Value Development filed objections to the magistrate's decision. UDF filed a response in opposition to Value Development's objections.

{¶35} The trial court initially issued a judgment entry on May 1, 2023. However, due to a clerk's error, UDF's response in opposition to the objections was not considered in the court's original judgment entry. Accordingly, the court issued a nunc pro tunc judgment entry on May 3, 2023 that considered UDF's response. The trial court found the magistrate's analysis and legal conclusions are supported by the language of the agreement. The trial court sustained Value Development's objection to paragraph 14, but found the language contained in paragraph 14 of the magistrate's decision is not dispositive of the ultimate issue and was merely included as an aside. The trial court adopted the magistrate's decision with the exception of paragraph 14, and denied Value Development's motion for attorney's fees and costs.

{¶36} UDF appeals the January 9, 2023 judgment entry of the Fairfield County Court of Common Pleas overruling its objections to the magistrate's decision, and assigns the following as error:

{¶37} "I. THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION FINDING IN FAVOR OF PLAINTIFFS-APPELLEES ON COUNT III OF THEIR COMPLAINT FOR A DECLARATORY JUDGMENT.

{¶38} "II. THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION FINDING IN FAVOR OF PLAINTIFFS-APPELLEES ON COUNTS I AND II OF THE COUNTERCLAIMS OF DEFENDANT-APPELLANT FOR SPECIFIC PERFORMANCE AND BREACH OF CONTRACT."

{¶39} Value Development appeals the May 3, 2023 judgment entry of the Fairfield County Court of Common Pleas denying their motion for attorney's fees and assigns the following as error:

{¶40} "I. THE COMMON PLEAS COURT ERRED BY CONCLUDING THAT VALUE DEVELOPMENT IS NOT ENTITLED TO ITS ATTORNEY'S FEES AND COSTS UNDER THE AGREEMENT."

*UDF'S Appeal*

*Contract Law & Standard of Review*

{¶41} In the case of contracts, the construction of the writing is a matter of law, which is reviewed de novo. *SPG, Inc. v. First Street Dev., LLC*, 5th Dist. Stark No. 2015CA000140, 2016-Ohio-2824.

{¶42} When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. *Id.* We will examine the contract as a whole and presume the intent of the parties is reflected in the language of the contract. *Id.* In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement.

*Id.* When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* If a contract is clear and unambiguous, "then its interpretation is a matter of law and there is no issue of fact to determined." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 652 N.E.2d 684 (1995).

{¶43} However, when the contract language is reasonably susceptible of more than one interpretation, the meaning of the ambiguous language is a question of fact. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992).

{¶44} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (Feb. 10, 1982). Questions of law are reviewed by this Court de novo. *Eris Ins. Co. v. Paradise*, 5th Dist. Fairfield No. 2008CA00084, 2009-Ohio-4005.

{¶45} When assessing the manifest weight of the evidence in a civil case, an appellate court is to examine the entire record and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

I.

**{¶46}** In its first assignment of error, UDF contends the trial court committed error in adopting the magistrate's decision finding in favor of Value Development on Count III of their complaint for a declaratory judgment.

**{¶47}** UDF first contends the magistrate's conclusion that by the Third Amendment's "plain terms" closing was required to occur on or before December 27 ignored or reconsidered the prior summary judgment entry issued by the trial court finding that ambiguities in the contract prevented summary judgment.

**{¶48}** To the extent that the magistrate and trial court reconsidered or revisited the prior summary judgment entry denying UDF's motion for summary judgment, we find this permissible pursuant to the Civil Rules, and not error. The denial of a motion for summary judgment is generally considered an interlocutory order not subject to immediate appeal. *Celebrezze v. Netzley*, 51 Ohio St.3d 89, 554 N.E.2d 1292 (1990); *Stevens v. Ackman*, 91 Ohio St.3d 182, 743 N.E.2d 901 (2001). Civil Rule 54(B) provides that, "any order or other form of decision, however designated, which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, * * * is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties." See *Hull v. Astro Shapes, Inc.*, 7th Dist. Mahoning No. 10 MA 26, 2011-Ohio-1656 (denial of Civil Rule 56 motion for summary judgment is interlocutory in nature, not final, and subject to revision); *Miller v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 27493, 2015-Ohio-2626 (because the trial court never entered a final judgment, law of the case doctrine did not prohibit it from revisiting the summary judgment issue).

{¶49}  Next, UDF contends the trial court committed error in finding the plain language of the contract required the parties to close by December 27, 2021.  UDF argues the language in the original contract providing that "if it takes more than sixty (60) days to complete the cut-up documents [UDF] shall have a day-for-day extension of the initial inspection period" was not eliminated in the Third Amendment, and the deadline for the inspection period was automatically and indefinitely extended because the cut-up documents were incomplete.

{¶50}  We find the trial court did not commit error in rejecting UDF's argument and finding the plain language of the Agreement and Third Amendment required the parties to close by December 27, 2021.  Section 4.4 of the Third Amendment, entitled "Inspection Period," states, "the Extended Inspection Period shall be extended for an additional period of sixty (60) days, commencing September 27, 2021 and expiring on November 26, 2021 ("Third Extended Inspection Period") in order to (i) obtain the necessary Approvals as provided by under Section 5 of the Initial Contract; (ii) finalize the Cut-Up documents, and (iii) mutually agree to the form of Declaration."  Section 7.1, entitled "Closing," provides that, "the parties hereto agree to close this purchase and sale on or before thirty (30) days after the expiration of the Inspection Period * * *."  The Third Amendment expressly stated the Inspection Period concluded on a date certain and closing was to occur thirty days thereafter.  Pursuant to the plain language of the Third Amendment, the parties expressly agreed to a firm end date.

{¶51}  UDF relies on the "day to day language" in the original Agreement.  However, in the Third Amendment, the parties specifically agreed the Inspection Period would end on November 26, 2021.  The Third Amendment provided a further extension

of the "Extended Inspection Period", not the Initial Inspection Period that was able to be extended with the day-to-day language contained in the original Agreement. One of the listed purposes of the Third Amendment was to "finalize the Cut-Up documents." If UDF's suggested day-to-day extension was in place to extend the Inspection Period until the parties finalized the cut-up documents, no amendments to the original Agreement would have been necessary. Finally, by the terms of the Third Amendment, if there is a "conflict between the terms and conditions of [the] Third Amendment and/or the Contract, the terms and conditions of this Third Amendment shall control."

**{¶52}** Further, even if the language of the contract was ambiguous, the extrinsic evidence establishes that the Inspection Period ended in November of 2021 and UDF failed to close by the closing date. "Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 667 N.E.2d 949 (1996). Extrinsic evidence can include: "(1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement." *Lutz v. Chesapeake Appalachia, LLC*, 148 Ohio St.3d 524, 2016-Ohio-7549, 71 N.E.3d 1010.

**{¶53}** In support of their argument, UDF cites a limited passage of Sabatino's testimony regarding the language in the Third Amendment regarding the date of December 31 ("The parties agree that if the Closing occurs after December 31, 2021, then at the time of Closing, Purchaser will be required to pay the commission due Broker

* * *), during which Sabatino testified that he wanted the provision in the Third Amendment because he wanted to incentivize UDF to close before December 31. UDF also cites the testimony of its attorney, Jody Klekamp, that "it was her assumption" that the closing may have to occur after December 31, 2021 because of the language in the Third Amendment. UDF argues this testimony demonstrates the December 27, 2021 closing date was "aspirational," rather than a firm deadline.

{¶54} However, the testimony of Sabatino cited by UDF is only one portion of his testimony. Several times during his testimony, Sabatino stated the Third Amendment provided a firm closing date of December 27, 2021, and that December 27, 2021 was a drop-dead closing date. Further, when Kling was asked, "where is the extension [of the closing date] beyond December 27, 2021 in this agreement," Kling responded, "I don't – it's not there." Kling testified that, in the Third Amendment, the inspection period was extended from September 2021 to November 26, 2021, and the Third Amendment established the closing date as before December 27, 2021. At trial, Kling's position was that the inspection period never expired. This contradicted Kling's deposition testimony that the closing had to occur by December 27, 2021. Klekamp confirmed she sent an e-mail on December 20, 2021 stating "pursuant to the Third Amendment to Purchase and Sale Agreement, the parties were to close on or before December 27, 2021." Klekamp further testified that, pursuant to the Third Amendment, "we were to close on or before December 27." Klekamp requested a Fourth Amendment to the contract in order to extend the December 27, 2021 closing date. Because ambiguous language creates a question of fact such that the trial court can use extrinsic evidence to determine the parties' intentions, our role is to determine whether there is relevant, competent, and

credible evidence upon which the fact-finder could base its judgment. *SPG, Inc. v. First Street Dev., LLC*, 5th Dist. Stark No. 2015CA000140, 2016-Ohio-2824. We find there is competent and credible evidence to support the trial court's decision, in the form of the testimony of Sabatino, Kling, and Klekamp.

**{¶55}** Based on the foregoing, we find the trial court did not commit error in adopting the magistrate's decision finding in favor of Value Development on the declaratory judgment count finding the contract expired by its own terms and UDF had no interest in the property.

II.

**{¶56}** In their second assignment of error, UDF argues the trial court committed error in finding in favor of Value Development on UDF's counterclaims for breach of contract and specific performance.

*Breach of Contract*

**{¶57}** To establish a breach of contract in Ohio, "a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled its obligations, (3) the defendant failed to fulfill its obligations, and (4) damages resulted from this failure. *Sanzo Ent., LLC v. Erie Ins. Exchange*, 5th Dist. Delaware No. 21-CAE-06-0026, 2021-Ohio-4268.

**{¶58}** As to its breach of contract claim, UDF argues the magistrate incorrectly determined that Value Development's obligation to "fully cooperate" with UDF's efforts to obtain the "Approvals" to develop the property was extinguished before the closing deadline and that, since full cooperation was required after closing, Sabatino's lack of approval of the traffic study was not full cooperation pursuant to the contract.

{¶59} We find the trial court did not commit error in finding Value Development's obligations with respect to the Approvals terminated at the close of the Inspection Period on November 26, 2021.

{¶60} Section 5 of the Agreement provides that "[s]eller agrees to fully cooperate with Purchaser, at Purchaser's sole cost and expense, in every respect with regard to securing the Approvals of the Property including, but not limited to, signing all documents that Purchaser shall deem necessary or appropriate, such as Plan Approval applications." The beginning of Section 5 provides, "[p]urchaser's obligation to purchase the property is contingent upon Purchaser obtaining during the Inspection Period, each of the following (collectively, the "Approvals") * * *." The end of Section 5 contains the following language, "If Purchaser has not terminated this Contract prior to the end of the Inspection Period, then all Contingencies, including but not limited to those in Section 5, shall be deemed to have been satisfied * * *."

{¶61} Pursuant to the plain language of the contract, UDF was required to obtain any Approvals "during the Inspection Period," which, pursuant to the Third Amendment, ended on November 26, 2021. The evidence does not suggest Value Development failed to cooperate or otherwise unreasonably withheld its approval prior to November 26, 2021, as the testimony was that the parties were cooperatively working towards resolving issues in September, October, and early November. Further, Sabatino did not receive the traffic study at issue until November 30, 2021. The Approvals were "deemed satisfied" because UDF did not terminate the contract prior to the end of the Inspection Period on November 26, 2021. During his testimony, Kling was asked "what happens if you don't get the comfort level or the approvals, as you understand it, what happens if you didn't get those

things prior to November 26, 2021 under the Third Amendment?" Kling responded, "at that point we agreed that those things have either been satisfied or we roll the dice as a buyer." Further, when asked about the Approvals with regard to UDF's specific performance claim, Kling stated UDF was "willing to roll the dice," even though UDF did not have formal approvals from Fairfield County of the traffic study.

{¶62} Further, even if Value Development was required to "fully cooperate" after the closing date, we find there is competent and credible evidence to support the trial court's determination. UDF contends Value Development failed to "fully cooperate" in "every respect" with UDF's efforts because Sabatino failed to authorize the submission of the Traffic Impact Study. However, the undisputed testimony is that a traffic study was not required in Fairfield County for a cut-up or a lot split, and that UDF ultimately submitted the traffic study to Fairfield County without Sabatino's approval. There is conflicting testimony as to whether, why, and if Sabatino was required to approve the traffic study.

{¶63} Upp stated a traffic study is not required before a lot split, and that his office reviews lot splits separate from traffic studies. Kling testified that Sabatino failed to cooperate as required by the contract because Sabatino failed to approve the traffic study. Sabatino stated the parties cooperated throughout the process to complete the traffic study, but that he repeatedly informed UDF and their engineers that he wanted certain corrections made to the study. UDF did not approve the traffic study until November 26, 2021. Sabatino did not receive the finalized traffic study for review until November 30, 2021. Sabatino believed UDF's engineers were going to make the changes and then execute the plats and legal descriptions. However, when Sabatino received the finalized traffic study on November 30, 2021, UDF did not make the changes Sabatino believed

were necessary to comply with the law because the study only referenced a single residual property, but there were really two residual properties. Sabatino testified he did not support the traffic study at that point because it was not truthful and did not accurately depict the existing conditions. Due to the conflicting testimony, we will give deference to the findings of the trial court because the fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony." *Seasons Coal Co., Inc. v. City of Cleveland,* 10 Ohio St.3d 77, 461 N.E. 2d 1273 (1984).

**{¶64}** We find the trial court did not commit error in finding in favor of Value Development on UDF's counterclaim for breach of contract.

*Specific Performance*

**{¶65}** UDF argues the trial court committed error in finding in favor of Value Development on UDF's request for specific performance because the Inspection Period did not expire until the cut-up documents were complete and because Value Development failed to "fully cooperate" in "every respect" with UDF's efforts to obtain permits.

**{¶66}** "Specific performance of contracts is matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case." *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 473 N.E.2d 798 (1984).

**{¶67}** We have determined that the trial court did not commit error in finding the Inspection Period expired on November 26, 2021, and that there is competent and credible evidence to support the trial court's determination that Value Development did

not breach the contract.  Accordingly, we find the trial court did not commit error in not ordering specific performance.

**{¶68}**  Further, pursuant to Section 6.2 of the contract, in order for UDF to obtain specific performance, the failure to close must be "at no fault of [UDF]."  UDF took responsibility for preparing the cut-up documents, and no cut-up documents had been prepared prior to the closing date.  *Equity Inns Partnership, L.P. v. Yun*, 8th Dist. Cuyahoga No. 74160, 1999 WL 980633 (because no lot split, defendant could not obtain specific performance of the contract).  Recognizing the trial court's role in equitable balancing, we are unable to find the court abused its discretion in failing to order specific performance.

**{¶69}**  Based on the foregoing, UDF's assignments of error are overruled.

*Cross-Appeal*

I.

**{¶70}**  Value Development appeals the trial court's determination on attorneys' fees.  While Value Development agrees with the trial court that it is the "prevailing party," Value Development contends the trial court committed error in its conclusion that it is not entitled to attorney' fees.  The trial court also denied UDF's request for attorneys' fees.

**{¶71}**  Section 17.2 of the Agreement provides as follows:

If either party commences an action against the other to enforce any of the

terms of this contract or because of the breach by either party of any of the

terms hereof, the losing or defaulting party shall pay to the prevailing party

its reasonable attorney's fees, costs, and expenses incurred in connection

with the prosecution or defense of such action.  The term "prevailing party"

means the party obtaining substantially the relief sought, whether by compromise, settlement, or judgment.

**{¶72}** R.C. 2721.16 provides, "[a] court of record shall not award attorney's fees to any party on a claim or proceeding for declaratory relief under this chapter" unless one of three statutory exceptions apply. These exceptions are: (1) where a statute specifically authorizes them, (2) punitive damages are awarded, or (3) the attorney's fees are awarded in accordance with equitable principles that permit the recovery of attorney's fees for services beneficial to a trust or estate. R.C. 2721.16(A)(1). There is no dispute that none of the statutory exceptions apply in this case. R.C. 2721.16 replaced former R.C. 2721.09, under which attorneys' fees could be granted by a trial court in a declaratory judgment action "whenever necessary and proper." *Kurtz v. Western Property, LLC*, 10th Dist. Franklin No. 10AP-1099, 2011-Ohio-6726.

**{¶73}** Value Development was not the prevailing party on Counts I or II of their complaint, a declaratory judgment claim seeking a declaration that UDF defaulted on the agreement, and a breach of contract claim. Value Development was the prevailing party on Count III, entitled "Interest in the Property." The language in the complaint as to Count III states:

A controversy exists between Value Development and UDF regarding whether UDF has an interest in the Property and whether UDF has a right to specific performance under the Agreement.

Value Development is entitled to a declaration that UDF has no interest in the Property.

Value Development is entitled to a declaration that UDF has no right to specific performance of the Agreement.

**{¶74}** In the "Prayer for Relief" as to Count III, the complaint states, "the court should enter a declaratory judgment pursuant to Ohio Revised Code Chapter 2721 that: (a) UDF has no interest in the property; and (b) UDF has no right to specific performance of the agreement."

**{¶75}** We find the plain and unambiguous language of R.C. 2721.16 precludes the trial court from awarding attorneys' fees on Count III because such fees would be awarded "on a claim or proceeding for declaratory relief." There are three listed exceptions contained in R.C. 2721.16, none of which are applicable to this case. The General Assembly did not include an exception for contractual attorney fee-shifting in R.C. 2721.16. This Court has held that R.C. 2721.16 bars an award of attorneys' fees in a declaratory judgment action even when a contract provision provides for an award of fees to the prevailing party. *Jewett v. Owners Inc. Co.*, 5th Dist. Licking No. 01 CA 38, 2002-Ohio-1282 (trial court erred in awarding attorney fees on a declaratory judgment action regarding the scope of coverage under an insurance contract because R.C. 2721.16 prohibits such an award); *Wingate Farms Owners Assn. v. Sankarappa*, 5th Dist. Delaware No. 11-CAE-05-0041, 2012-Ohio-14 (proceeding was a declaratory judgment proceeding within the meaning of R.C. 2721.16 and the court did not err in failing to award attorney fees); *Stark Commons, Ltd. v. Landry's Seafood House-Ohio, Inc.*, 5th Dist. Stark No. 2008CA00206, 2009-Ohio-3847 (trial court erred in awarding attorney fees in a declaratory judgment case in which a trial court found a lease was terminated and defendant had no interest in the lease or premises); *Stark Commons, Ltd. v. Landry's*

*Seafood House-Ohio, Inc.*, 123 Ohio St.3d 1510, 2009-Ohio-6210, 2009-Ohio-3847 (declining to accept the proposed assignment of error, "whether attorney fees authorized under the express terms of a commercial lease can be awarded to the prevailing party in accordance with the contract terms even though declaratory relief is sought").

{¶76} This Court has upheld awards of attorneys' fees in declaratory actions, but only in cases where the attorneys' fees were incurred for the purpose of enforcing restrictive covenants of homeowners' associations. In these cases, we found that R.C. 2721.16 did not prohibit a fee award because the "action involved the enforcement of restrictive covenants (i.e., not a claim for declaratory relief)." *Morgan Woods Homeowners' Assn v. Willis*, 5th Dist. Licking No. 11 CA 57, 2012-Ohio-233, *Polaris Owners Assn v. Solomon Oil Co.*, 5th Dist. Delaware No. 14 CAE 11 0075, 2015-Ohio-4948. See also *Ashwood Home Owners' Assn v. Reitor*, 12th Dist. Butler No. CA2003-06-142, 2004-Ohio-3536 (R.C. 2721.16 did not preclude the award of attorney fees because the action involved the enforcement of restrictive covenants, not a claim for declaratory relief); *Robson v. Discount Drug Mart, Inc.*, 9th Dist. Medina No. 22CA0049-M, 2023-Ohio-3291 (rejecting appellant's argument that lower court abused discretion by not awarding attorney fees under R.C. 2721. 09 because R.C. 2721.09 is subject to the restriction set forth in R.C. 2721.16). There is no enforcement of restrictive covenants in this case; thus, these cases are not applicable.

{¶77} The trial court did not abuse its discretion in denying Value Development's request for attorney fees on Count III of their complaint because R.C. 2721.16 specifically prohibits such an award.

**{¶78}** Further, even if R.C. 2721.16 did not apply to prevent an award of attorneys' fees in a declaratory judgment case, we find the trial court did not commit error in finding Count III did not "enforce" the contract, but rather "interpreted" the contract.

**{¶79}** We review de novo the trial court's interpretation of a contractual fee-shifting provision. *Keal v. Day*, 1st Dist. Hamilton No. C-050107, 2005-Ohio-5551. Absent ambiguity in the language of the contract, the parties' intent to award fees only to prevailing parties must be determined from the plain language of the document. *Id.*

**{¶80}** The plain meaning of the word "enforce" is to "compel the observance of." *Oxford English Dictionary* (1989). The trial court granted Value Development's request for declaratory judgment, finding the contract expired on its own terms, and that UDF has no interest in the property. The trial court did not compel or order UDF to perform any agreement or obligation, it simply stated the contract had terminated on December 27, 2021, and that UDF has no interest in the property.

**{¶81}** Value Development also argues the trial court committed error in denying its request for attorneys' fees because they were the "prevailing party" in UDF's counterclaims for breach of contract and specific performance. The trial court did not award Value Development attorney fees for defending against UDF's claims for breach of contract and specific performance because, pursuant to the plain language of the contract, Value Development did not "commence" these claims. Similarly, the trial court did not award UDF attorneys' fees for its successful defense against Value Development's breach of contract claim.

**{¶82}** Value Development cites several cases in support of their argument. However, the majority of them do not contain language similar to the Agreement in this

case, which specifically includes the word "commences."  The cases cited by Value Development broadly discuss whether attorney fees can be awarded for successfully defending against counterclaims.  However, in each of the cases cited, the contract provisions regarding attorney fees were much broader than the language contained in this Agreement.  *Premium Ents. v. T.S., Inc.*, 9th Dist. Medina No. 2751-M, 1999 WL 61488 (Feb. 9, 1999) (contract required defendant to pay "all plaintiff's costs and expenses, including attorney fees incurred in collecting payments due or to become due from [defendant] or enforcing any rights of [plaintiff]"); *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516 (2d Cir. 1990) (contract language stated party would pay "all expenses in connection with the loan," including attorney fees; language is substantially broad);  *Erickson Ents. v. Louis Wohl &* Sons, 422 So.2d 1085 (Fla.App. 1982) (contract language stating, "in the event collection action becomes necessary * * * all charges including attorney's fees will be paid by the purchaser").  Further, many of them applied the laws of states other than Ohio.  *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516 (2d Cir. 1990) (applying New York and Michigan law); *Erickson Ents. v. Louis Wohl &* Sons, 422 So.2d 1085 (Fla.App. 1982) (applying Florida law).  The case that does mention the word "commence" is a case discussing Florida law. *Burger King Corp. v.* Mason, 710 F.2d 1480 (11th Cir. 1983).  Further, the dispute in the *Burger King* case centered around whether a counterclaim constituted a "legal action," not whether an action was "commenced."

{¶83} We find the trial court did not commit error in its determination.  The agreement unambiguously includes the term "commences" in Section 17.2 in relation to attorney fees.  The plain and ordinary meaning of the word "commence" is "to begin."

*Oxford English Dictionary* (1989). Ohio Civil Rule 3(A) provides that a "civil action is commenced by filing a complaint with the court." Value Development did not "commence" or "begin" the claim at issue; rather, they successfully defended against it. We decline to re-write the parties' agreement to broaden the language contained in the agreement because, when the terms of the contract are clear and unambiguous, courts must give words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the contract. *Alexander v. Buckeye Pipe Line*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). Value Development's assignment of error is overruled.

{¶84} Based on the foregoing, UDF's assignments of error are overruled. Value Development's assignment of error is overruled.

{¶85} The January 9, 2023 and May 3, 2023 judgment entries of the Fairfield County Court of Common Pleas are affirmed.

By Gwin, P.J., and

Wise, J., concur;

King, J., concurs separately

*King, J., concurring in part and concurring in judgment.*

{¶ 86} I concur with much of Judge Gwin's well-reasoned opinion. Because of R.C. 2721.16 and this court's precedent, I agree with the conclusion the trial court did not err in refusing to award to attorney fees. I do not join the court's conclusion set forth in paragraphs 78-83. That portion of the analysis not central the resolution of this case, and without considering it, I arrive at the same conclusion as the majority. Accordingly, I concur in judgment only.

_____
Hon. Andrew J. King