[Cite as *JLP-Orange, L.L.C. v. Tuller Square Northpointe, L.L.C.*, 2024-Ohio-2236.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JLP-ORANGE, LLC | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | Hon. John W. Wise, J. |
| -vs- | Case No. 23 CAE 11 0098 |
| TULLER SQUARE NORTHPOINTE, LLC | |
| Defendant-Appellee | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Delaware County Court of Common Pleas, Case No. 23 CV H 01 0507 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 11, 2024 |
| APPEARANCES: | |

| | |
|---|---|
| For Plaintiff-Appellant | For Defendant-Appellee |
| JAMES D. ABRAMS<br>ANDREW M. MARTIN<br>Taft Stettinius & Hollister, LLP<br>41 South High Street, Suite #1800<br>Columbus, Ohio 43215 | JENNIFER BATTLE<br>JOEL E. SECHLER<br>Carpenter Lipps and Leland, LLP<br>280 North High Street, Suite #1300<br>Columbus, Ohio 43215 |

*Hoffman, J.*

**{¶1}** Plaintiff-appellant JLP-Orange LLC ("JLP-Orange") appeals the October 23, 2023 Judgment Entry entered by the Delaware County Court of Common Pleas, which granted judgment on the pleadings to defendant-appellee Tuller Square Northpointe LLC ("Northpointe").

STATEMENT OF THE FACTS AND CASE

**{¶2}** JLP-Orange owns a planned commercial development along U.S. Rte 23 in Delaware County, Ohio ("the JLP Property"). The JLP Property lies directly north of Northpointe's previously developed property ("the Northpointe Property"). The Northpointe Property includes, along its northern border, a private drive. The drive is constructed entirely on the Northpointe Property and runs east-west between U.S. Rte 23 and Highfield Drive.

**{¶3}** In a correspondence dated May 4, 1998 ("May 4, 1998 Correspondence"), sent to the Planning & Program Administrator of the Ohio Department of Transportation ("ODOT"), Richard Solove, the General Partner of Tuller Square Partnership ("the Partnership"), outlined his understanding of an April 29, 1998 conversation between ODOT and the Partnership regarding the then-planned development of what is now the Northpointe Property. The May 4, 1998 Correspondence set forth the Partnership's commitment to construct a 30-foot-wide non-dedicated private roadway which would connect the property at the northern boundary line to the point of ingress and egress at a planned intersection along the western boundary line of the Northpointe Property. The roadway is separate and distinct from the private drive also on the Northpointe Property.

**{¶4}** The May 4, 1998 Correspondence further noted the roadway would be opened to the public once the following five conditions were completed to the Partnership's "sole satisfaction:"

1. The traffic signal at the Intersection [to be located north of U.S. Rte. 23/N. High Street and Meadow Park Avenue at the main entrance to the Northpointe Property] is installed and operating.

2. [The Partnership obtains] a cross-easement in a form acceptable to [it] for ingress and egress through the property to the north of [its] site owned by Continental/Schottenstein, Ltd. ("Continental Property") granting access to the traffic signal to be installed at an intersection on High Street at the lot line between the Continental property and The Glimcher Co. property, which is immediately north of the Continental property ("Continental/Glimcher intersection").

3. [The Partnership obtains] a cross-easement in a form acceptable to [it] for ingress and egress through the Continental property granting access to a right-in/right-out turn at a mutually agreeable point on High Street, immediately north of [the Northpointe Property].

4. The traffic signal at the Continental/Glimcher intersection is installed and operating.

5. Highfield Drive is extended through the Continental property to its northern boundary.

May 4, 1998 Correspondence.

{¶5} At this time, the JLP Property was owned by Continental/Schottenstein. Ltd. ("Continental/Schottenstein"), which was neither a signatory to nor a recipient of the May 4, 1998 Correspondence.  On February 12, 1999, Continental/Schottenstein deeded the JLP Property to Schottenstein Professional Asset Management Corporation ("Schottenstein Professional") pursuant to a limited warranty deed. The limited warranty deed did not mention the May 4, 1998 Correspondence or either of the proposed easements across the Northpointe Property described therein.  On September 26, 2008, Schottenstein Professional deeded the JLP Property to JLP-Orange pursuant to a limited warranty deed. The limited warranty deed provided the JLP Property was conveyed to JLP-Orange "subject to easements, conditions, covenants, restrictions, reservations and encumbrances of record." The May 4, 1998 Correspondence is not referenced in the limited warranty deed.

{¶6} ODOT constructed the traffic signals contemplated in conditions one and four of the May 4, 1998 Correspondence.  In addition, as contemplated in condition five, Highfield Drive was extended through the JLP Property to the property's northern boundary.  JLP-Orange contends, but Northpointe denies, the 30-foot-wide non-dedicated private roadway, as described in the May 4, 1998 Correspondence, has been constructed.

{¶7} On July 19, 2023, JLP-Orange filed a complaint against Northpointe, alleging breach of contract, declaratory judgment, and unjust enrichment, and seeking preliminary and permanent injunctive relief. Under the breach of contract theory, JLP-Orange asserted it was an intended third-party beneficiary of the May 4, 1998 Correspondence and Northpointe breached the contract by failing to provide JLP-Orange

with a cross-easement for ingress and egress through the Northpointe Property along the 30-foot-wide non-dedicated private roadway.  In the alternative, JLP-Orange argued it was entitled to damages under an unjust enrichment theory as the result of Northpointe's refusal to provide the cross-easement. JLP-Orange also sought a declaration Northpointe was obligated to provide JLP-Orange with the cross-easement as well as an injunction requiring Northpointe to grant the cross-easement to JLP-Orange.

**{¶8}** On September 5, 2023, Northpointe filed an answer as well as a motion for judgment on the pleadings. JLP-Orange filed a memorandum contra on October 3, 2023. Northpointe filed a reply on October 12, 2023.

**{¶9}** Via Judgment Entry filed October 24, 2023, the trial court granted Northpointe's motion for judgment on the pleadings.

**{¶10}** It is from this judgment entry Appellant appeals, asserting the following as error:

I. THE TRIAL COURT ERRED IN GRANTING JUDGMENT ON THE PLEADINGS AS TO JLP-ORANGE'S BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS.

II. THE TRIAL COURT ERRED IN GRANTING JUDGMENT ON THE PLEADINGS AS TO JLP-ORANGE'S ALTERNATIVE CLAIM OF UNJUST ENRICHMENT.

III. THE TRIAL COURT ERRED IN DISMISSING JLP-ORANGE'S CONTRACT CLAIMS WITH PREJUDICE, BY WAY OF JUDGMENT ON THE PLEADINGS.

*Standard of Review*

**{¶11}** Civ. R. 12(C) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." As the reviewing court, our review of a dismissal of a complaint based upon a judgment on the pleadings requires us to independently review the complaint and determine if the dismissal was appropriate. *Rich v. Erie County Department of Human Resources*, 106 Ohio App.3d 88, 91, 665 N.E.2d 278 (1995). A reviewing court need not defer to the trial court's decision in such cases. *Id.*

**{¶12}** A motion for a judgment on the pleadings, pursuant to Civ. R. 12(C), presents only questions of law. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165–166, 297 N.E.2d 113 (1973). The determination of a motion under Civ. R. 12(C) is restricted solely to the allegations in the pleadings and the nonmoving party is entitled to have all material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in its favor. *Id.* Evidence in any form cannot be considered. *Conant v. Johnson*, 1 Ohio App.2d 133, 135, 204 N.E.2d 100 (1964). In considering such a motion, one must look only to the face of the complaint. *Nelson v. Pleasant*, 73 Ohio App.3d 479, 597 N.E.2d 1137 (1991).

I

{¶13} In its first assignment of error, JLP-Orange submits the trial court erred in granting judgment on the pleadings as to its breach of contract and declaratory judgment claims.

{¶14} "[A] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." *Phillips v. Spitzer Chevrolet Company, et al.,* Stark App. No. 2006CA00002, 2006-Ohio-4701, at ¶ 17, citing *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108 (1995).

{¶15} "The existence of a contract is a question of law." *Zelina v. Hillyer,* 165 Ohio App.3d 255, 846 N.E.2d 68, 2005–Ohio–5803, at ¶ 12, citing *Telxon Corp. v. Smart Media of Delaware, Inc.,* 9th Dist. Nos. 22098 and 22099, 2005-Ohio-4931, 2005 WL 2292800, at ¶ 40. "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper,* 96 Ohio St.3d 1, 770 N.E.2d 58, 2002–Ohio–2985, at ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.* (N.D. Ohio 1976), 436 F.Supp. 409, 414.

{¶16} JLP-Orange alleges the "terms of the 1998 Letter Agreement support, the (1) existence of a sufficiently definite, binding contract between [Northpointe] and ODOT, (2) of which JLP-Orange is a third-party beneficiary, and (3) as to which the only obligations that went unfulfilled are those [Northpointe] owed to JLP-Orange – thereby

supporting the viability of JLP's breach of contract and declaratory judgment claims." Brief of Appellant at p. 7.

**{¶17}** Initially, we must determine whether the May 4, 1998 Correspondence was an offer capable of acceptance.

**{¶18}** "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322, 325, 663 N.E.2d 1316 (2d Dist. 1995), citing 1 Restatement of the Law 2d, Contracts (1981), Section 24. "[C]onduct sufficient to show agreement, including performance, is a reasonable mode of acceptance." *Tlg Electronics, Inc. v. Newcome Corp.,* 10th Dist. Franklin No. 01AP—821, 2002-Ohio-882, 2002 WL 338203, *2, citing *Central Transport, Inc. v. Cleveland Metallurgical Supply Co.*, 8th Dist. Cuyahoga App. No. 63055, 1993 WL 266924, *3, citing *American Bronze Corp. v. Streamway Products*, 8 Ohio App.3d 223 (1982), paragraph two of the syllabus.

**{¶19}** In its October 24, 2023 Judgment Entry, the trial court found:

> While the 1998 Letter resembles an offer in that [Northpointe] committed to constructing and opening to the public a 30-foot-wide roadway *upon* the satisfaction of the enumerated conditions, that obligation would only arise upon the satisfaction of conditions that include steps that only [Northpointe] *itself* could satisfy.  Conditions (2) and (3) of the 1998 Letter pertain to cross-easements between the neighboring properties.  In no way could ODOT have acted to satisfy these conditions and, therefore, accept

the offer because those conditions, by definition, could be satisfied only by [Northpointe] and the owner of the northern property. * * * In effect, viewing the 1998 Letter as an offer with conditions for acceptance that only [Northpointe] could satisfy renders the contract illusory."

Id. at pp. 5-6.

{¶20} We agree, in part, with the trial court's finding the May 4, 1998 Correspondence is an illusory contract.

{¶21} "A contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and this makes it merely illusory." Imbrogno v. Mimrx.com, Inc., 10th Dist. Franklin No. 03AP–345, 2003–Ohio–6108, ¶ 8, citing Century 21 Am. Landmark, Inc. v. McIntyre, 68 Ohio App.2d 126, 427 N.E.2d 534, paragraph one of the syllabus (1st Dist. 1980). (Emphasis in original). Illusory contracts are not enforceable. Id.

{¶22} The May 4, 1998 Correspondence provided the roadway would be opened to the public once the five conditions were completed to Northpointe's "sole satisfaction." Because Northpointe alone retained the right to determine if the conditions were completed to its satisfaction, the May 4, 1998 Correspondence was illusory, in part.

{¶23} We also find the May 4, 1998 Correspondence was not an offer which ODOT could accept through the performance of all five of the conditions. "As long as both parties contemplate that something remains to be done to establish contractual relationship, no contract has been made." Bibb v. Home Sav. & Loan Co., 6th Dist. Huron No. H-87-26, 1991WL1572, *4, citing General Motors Corp. v. Keener Motors, Inc. (1952),

194 F.2d 669, 676, 63 Ohio Law Abs. 392 (1952). ODOT's construction of the intersections and extension of Highfield Drive fulfilled only three (3) of five (5) conditions which had to be satisfied before Northpoint would create the public roadway. ODOT was unable to satisfy two (2) of those conditions, specifically, granting cross-easements over the JLP-Orange and Northpointe Properties.

{¶24} We now turn to the issue of whether the May 4, 1998 Correspondence was enforceable as a contract with conditions precedent.

{¶25} A condition precedent is a condition that must be performed before the obligations in the contract become effective. *M3 Producing, Inc. v. Tuggle*, 5th Dist. Stark No. 2017CA00036, 2017-Ohio-9123, 91 N.E.3d 805, ¶ 14, citing *Kern v. Clear Creek Oil Co.*, 149 Ohio App.3d 560, 2002-Ohio-5438, 778 N.E.2d 115 (2002), citing *Troha v. Troha*, 105 Ohio App.3d 327, 663 N.E.2d 1319 (1995). Essentially, a condition precedent requires that an act "must take place before a duty of performance of a promise arises. *Id.* If the condition is not fulfilled, the parties are excused from performing." *Id.* Whether a provision of a contract is a condition precedent is a question of the parties' intent. *Id.* Intent is ascertained by considering not only the language of the particular provision but also the language of the entire agreement and its subject matter. *Id.*

{¶26} The trial court found Northpointe's "pledge to open the 30-foot-wide roadway [was] a promise with no corresponding return promise," which rendered the alleged contract void for lack of consideration. October 24, 2023 Judgment Entry at p. 7. We disagree. We find conditions 1, 4, and 5 set forth in the May 4, 1998 Correspondence once performed by ODOT, contractually obligated Northpointe to open the 30-foot roadway to the public, which Northpointe did, in fact, do. Had Northpointe not opened the

roadway to the public, we find ODOT would have had a legal remedy to require Northpointe to do so based upon ODOT's performance of the conditions precedent. However, we sever those conditions from conditions 2 and 3, which are clearly illusory as between ODOT and Northpointe, and cannot, in any manner, be said to constitute a contract.

**{¶27}** "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Adams v. Morningstar*, 4th Dist. Pickaway No. 21CA5, 2022-Ohio-918, ¶ 26, citing *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 16. "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.*

**{¶28}** ODOT's installation of the traffic signals, which created the corresponding intersections, (and the extension of Highfield Drive) were conditions precedent to Northpointe's opening of the public roadway, which Northpointe subsequently fulfilled. However, ODOT's actions were separate from, and provided no consideration for, any promises between Northpointe and JLP-Orange, rendering the May 4, 1998 Correspondence illusory as to any rights or obligations between Northpointe and JLP-Orange. Conditions 2 and 3, which related to the cross-easements between the Northpointe and JLP-Orange Properties, had to be completed to Northpointe's sole satisfaction, which leads back to the finding the May 4, 1998 Correspondence is illusory, and unenforceable between them.

**{¶29}** Having found the May 4, 1998 Correspondence was a valid contract between ODOT and Northpointe as to conditions 1, 4, and 5, we must determine whether JLP-Orange is a third-party beneficiary to that severed portion of the contract.

**{¶30}** "Ohio law thus requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party." *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12. "Generally, the parties' intention to benefit a third party will be found in the language of the agreement." *Id.*

**{¶31}** In *Huff*, supra, the Ohio Supreme Court adopted the "intent to benefit" test to determine whether a party is an intended beneficiary of a contract. Under that test,

if the promisee * * * intends that a third party should benefit from the contract, then that third party is an "intended beneficiary" who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an "incidental beneficiary," who has no enforceable rights under the contract.

*Id.* at ¶ 11, citing *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988), quoting *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980).

**{¶32}** We find the May 4, 1998 Correspondence is devoid of any language which evidences JLP-Orange or its predecessors were intended third-party beneficiaries. At best, they were potential, incidental beneficiaries.

**{¶33}** JLP-Orange maintains it is an intended third-party beneficiary to the May 4, 1998 Correspondence as Condition 2 provides for a cross-easement for ingress and egress through the Continental Property. JLP-Orange explains "intent is inherent in the word 'cross,' and the reciprocal nature of cross-easements more generally. Brief of Appellant at p. 11. JLP-Orange further insists, "by agreeing to construct a roadway providing access to the new intersection and traffic signal abutting its property, and obtaining a 'cross-easement' for access across JLP-Orange's property to another new traffic signal * * *, [Northpointe] necessarily committed to providing JLP-Orange with reciprocal access to the newly-built roadway that, per [Northpointe's] promise to ODOT, would be '*open to the public*.' " *Id.* at pp. 11-12. We disagree.

**{¶34}** Condition 2 states, Tuller Square Partnership will "obtain a cross-easement in a form acceptable to us for ingress and egress *through the property to the north of our site* owned by Continental/Schottenstein, Ltd. ("Continental property") granting access to the traffic signal to be installed at an intersection on High Street * * *." May 4, 1998 Correspondence at p. 1, unpaginated. (Emphasis added).

**{¶35}** Although not defined, we find the use of the term "cross-easement" in condition 2 of the May 4, 1998 Correspondence means an easement across the JLP-Orange Property, not a reciprocal easement between Northpointe and JLP-Orange. Specifically, the easement would grant Northpointe ingress and egress through the JLP-Orange Property. Condition 2 does not refer to Northpointe granting JLP-Orange or its

predecessors with access across the Northpointe Property. The May 4, 1998 Correspondence does not contemplate reciprocal easements between Northpointe and JLP-Orange. In addition, if a reciprocal easement was contemplated, the form of the easement condition 2 requires "a cross-easement in a form acceptable to [Northpointe]." Such has not occurred.

**{¶36}** Based upon the foregoing, we find the trial court did not err in granting judgment on the pleadings as to JLP-Orange's breach of contract and declaratory judgment claims.

**{¶37}** JLP-Orange's first assignment of error is overruled.

II

**{¶38}** In its second assignment of error, JLP-Orange argues the trial court erred in granting judgment on the pleadings as to its alternative claim of unjust enrichment.

**{¶39}** To establish a claim for unjust enrichment a plaintiff must demonstrate: (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Robinette v. PNC Bank*, 5th Dist. Licking No. 15-CA-47, 2016-Ohio-767, 2016 WL 771319, ¶ 23, citing *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

**{¶40}** The doctrine of unjust enrichment "applies when a benefit is conferred and it would be inequitable to permit the benefitting party to retain the benefit without compensating the conferring party." *KN Excavation LLC v. Rockmill Brewery LLC,* 5th Dist. Fairfield No. 2021 CA 00034, 196 N.E.3d 916, 2022-Ohio-3414, ¶ 24, citing *Garb-Ko, Inc. v. Benderson*, 10th Dist. Franklin No. 12AP-430, 2013-Ohio-1249, 2013 WL

1303815, ¶ 25. The purpose of an unjust enrichment claim is not to compensate the plaintiff for loss or damage suffered by the plaintiff, but to enable the plaintiff to recover the benefit he conferred on the defendant when it would be unjust for the defendant to retain the benefit. *Id.*, citing *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20.

**{¶41}** JLP-Orange submits, in its Complaint, it "alleged that it conveyed a benefit upon [Northpointe] by its agreement/willingness to agree to the cross-easement which facilitated and ultimately resulted in the intersection and traffic signal being installed on [Northpointe's] property" and which Northpointe has "unjustly and knowingly retained [the] benefit [therefrom] *solely for itself* by failing to agree to the cross-easement." Brief of Appellant at p 16. (Emphasis in original).

**{¶42}** In its October 24, 2023 Judgment Entry, the trial court found:

The parties agree that Northpointe never accepted an easement from JLP-Orange (*See* [Complaint] ¶ 11; Def.'s 9/5/23 Answer ¶ 31) Northpointe could not, therefore, be unjustly enriched by a grant of land rights from JLP-Orange to Northpointe. Additionally, nowhere is it alleged that JLP-Orange provided funding or labor for the construction of an intersection. But even if JLP-Orange can show, as alleged, that its mere *willingness* to provide an easement to Northpointe has resulted in an intersection being built to which only Northpointe has access, JLP-Orange would not have a valid unjust-enrichment claim because the alleged benefit that resulted from that willingness – Northpointe's access to the intersection

– is not a benefit that JLP-Orange was ever capable of granting to Northpointe, At best, JLP-Orange could show that the benefit it conferred on Northpointe resulted in the intersection being built as a mere consequence. As a result, under no set of facts could JLP-Orange prove that Northpointe has been unjustly enriched by JLP-Orange's promise.

October 24, 2023 Judgment Entry at pp. 9-10.

**{¶43}** We agree with the trial court. Northpointe neither requested nor received an easement from JLP-Orange. We find JLP-Orange's readiness and willingness to grant an easement to Northpointe is not a benefit conferred on Northpointe; therefore, Northpointe was not unjustly enriched. In addition, that Northpointe did not seek the cross-easement discussed in conditions 2 and 3 of the May 4, 1998 Correspondence, which, according to JLP-Orange, resulted in it being "unable to grant the cross-easement," does not change the fact JLP-Orange did not confer a benefit on Northpointe. We further find Northpointe's access to the intersection was not a benefit conferred by JLP-Orange, but rather by ODOT, which installed the traffic signal creating the intersection.

**{¶44}** Based upon the foregoing, we find the trial court did not err in granting judgment on the pleadings in favor of Northpointe on JLP-Orange's alternative theory of unjust enrichment.

**{¶45}** JLP-Orange's second assignment of error is overruled.

III

**{¶46}** In its third assignment of error, JLP-Orange maintains the trial court erred in dismissing its contract claims with prejudice. Specifically, JLP-Orange asserts the trial court should have provided it with leave to amend its complaint.

**{¶47}** In a footnote in its Memorandum Contra Defendant's Motion for Judgment on the Pleadings, JLP-Orange remarked:

> Although Plaintiff maintains that the facts have been well-pled, and that the Court should deny Defendant's Motion, should the Court disagree, Plaintiff respectfully moves the Court to provide Plaintiff with the opportunity to amend its Complaint.
>
> Memorandum Contra Defendant's Motion for Judgment on the Pleadings at p. 11, footnote 2.

**{¶48}** This Court has previously questioned whether a request for leave to amend made in a footnote in a memorandum in opposition to a motion for judgment on the pleadings is an appropriate motion for leave to amend the complaint. *Sanzo Ent., LLC v. Erie Ins. Exchange*, 5th Dist. Delaware, 2021-Ohio-4268, 182 N.E.3d 393, ¶68. The trial court did not rule on JLP-Orange's request; therefore, it was implicitly overruled. See, *Id.* Nonetheless, we shall consider whether the trial court abused its discretion in denying JLP-Orange's motion for leave to amend. See, *Patterson v. V & M Auto* Body, 63 Ohio St.3d 573, 576, 589 N.E.2d 1306 (1992) (The denial of leave to amend a pleading is reviewed under an abuse-of-discretion standard).

**{¶49}** "While Civ.R. 15(A) provides that leave to amend should be given freely, a trial court properly refuses to grant leave to amend when amendment would be futile." *Hensley v. Durrani,* 1st Dist. Hamilton No. C–130005, 2013-Ohio-4711, 2013 WL 5777076, ¶ 14, citing *Natl. City Bank v. Citizens Natl. Bank of Southwest Ohio,* 2d Dist. Montgomery No. 20323, 2004–Ohio–6060, ¶ 26.

**{¶50}** Based upon our disposition of JLP-Orange's first assignment of error, we find the trial court did not abuse its discretion in denying its motion for leave to amend as amendment would be futile. JLP-Orange cannot plead its claims in any other way. The claims are predicated on the May 4, 1998 Correspondence, which we found, supra, is an illusory contract. We also found, supra, any alleged contract is void for lack of consideration. Finally, the May 4, 1998 Correspondence does not identify JLP-Orange as an intended third-party beneficiary.

**{¶51}** JLP-Orange's third assignment of error is overruled.

**{¶52}** The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Hoffman, J.

Delaney, P.J.  and

Wise, J. concur