[Cite as *Walkers Corner Hill Rd., L.L.C. v. Access Urgent Med. Care of Pickerington, Inc.*, 2025-Ohio-3063.]

## COURT OF APPEALS FAIRFIELD COUNTY, OHIO
## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WALKERS CORNER HILL ROAD, LLC | Case No. 2024 CA 00046 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Fairfield County Court of Common Pleas, Case No. 2023-CV-00149 |
| ACCESS URGENT MEDICAL CARE OF PICKERINGTON, INC. | |
| | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: August 26, 2025 |

**BEFORE:** William B. Hoffman, Andrew J. King; Robert G. Montgomery, Appellate Judges

**APPEARANCES:** Matthew R. Duncan, Hilary F. DeSaussure, for Plaintiff-Appellee; Percy Squire, for Defendant-Appellant.

OPINION

*Hoffman, P.J.*

**{¶1}** Defendant-appellant Access Urgent Medical Care of Pickerington, Inc. ("AUMC") appeals the May 31, 2024 Entry entered by the Fairfield County Court of Common Pleas, which granted summary judgment in favor of plaintiff-appellee Walkers Corner Hill Road, LLC ("WCHR").

## STATEMENT OF THE FACTS AND CASE

**{¶2}** DDR Continental LP ("DDR Continental) previously owned commercial property located at 1797 Hill Road North, Unit No. 2, Pickerington, Ohio ("the Premises"). On or about July 30, 2003, DDR Continental and America's Urgent Care, Inc. executed a commercial lease of the Premises with a ten-year term ("the Original Lease"). In December, 2017, the Original Lease was amended ("the Lease") and assigned to DDR's successor-in-interest, Walker's Corner III, LLC, and America's Urgent Care's successor-in-interest, AUMC. The Lease extended the lease term for an additional seven (7) years, terminating on December 31, 2024. In addition, the Lease required AUMC to make monthly base rent payments, pay its proportionate share of any and all utilities and rubbish disposal, and pay a common area charge. Except as amended by the Lease, the Original Lease "remain[ed] unchanged and in full force and effect." First Amendment to Lease at p. 4, Exhibit B, Affidavit of Razieh Mohseni attached to Plaintiff's Motion for Summary Judgment.

**{¶3}** On April 8, 2020, Walker's Corner III, LLC, conveyed the Premises to WCHR through a Limited Warranty Deed. The Limited Warranty Deed was filed for record with the Fairfield County Recorder's Office as Instrument No. 2020000072667, on April

15, 2020. On April 13, 2020, Walker's Corner III, LLC, and WCHR executed an Assignment and Assumption of Leases, which included, inter alia, the Lease.

{¶4} The parties' performed their respective obligations under the Lease without incident until September 6, 2022, when AUMC informed WCHR it had permanently closed its business on July 30, 2022, but had found a suitable party interested in assuming the Lease and that party would be contacting WCHR. In response, WCHR advised AUMC it was still responsible for its obligations under the Lease. AUMC did not pay its financial obligations despite multiple reminders from WCHR of AUMC's obligation to perform until the expiration of the Lease term or until a new tenant was secured.

{¶5} Under the Lease, WCHR did not have a duty to mitigate any damages it suffered as a result of AUMC's default, but, nonetheless, attempted to secure a new tenant to assume the Lease. WCHR was unsuccessful in securing a new tenant prior to the expiration of the Lease.

{¶6} On February 10, 2023, WCHR sent a Demand for Payment of Past-Due Rent and Charges ("the Demand Letter") to AUMC. AUMC did not respond to the Demand Letter. As a result, on March 8, 2023, WCHR filed a complaint for forcible entry and detainer (Count I) and money damages for breach of lease (Count II). AUMC filed a motion to dismiss on March 23, 2023. WCHR filed a brief in opposition on April 19, 2023. On May 17, 2023, the parties filed a consent judgment entry. Therein, the parties stipulated AUMC had voluntarily vacated the Premises and had abandoned certain property including, but not limited to: furniture, office supplies, medical supplies, and other personal and tangible property; AUMC relinquished all rights, title, claims, and possession of the abandoned property; and WCHR was permitted to dispose of the abandoned

property.  The parties agreed WCHR would dismiss Count I of the complaint, but WCHR could pursue Count II.

**{¶7}**    Via Entry issued May 17, 2023, the trial court overruled AUMC's motion to dismiss.  The trial court found the motion to dismiss was moot as to Count I, and overruled the motion as to Count II because the motion presented "questions of fact and law as to the alleged contract, and the parties' performance thereto, that are not properly resolved by the Court on a Motion to Dismiss." May 17, 2023 Entry Overruling Motion to Dismiss, p. 2.

**{¶8}**    On July 17, 2023, AUMC filed a motion for leave to file an answer and counterclaim instanter.  AUMC argued leave was appropriate as the parties had been engaged in settlement discussions, which excused AUMC from filing a timely answer. WCHR filed a memorandum in opposition on July 23, 2023, asserting the settlement discussions did not begin until after AUMC's answer was due. AUMC filed a reply thereto on August 1, 2023. Via Entry filed January 22, 2024, the trial court denied AUMC's motion for leave, finding AUMC failed to show excusable neglect for failing to timely file its answer.

**{¶9}**    On April 12, 2024, WCHR filed a motion for summary judgment on the remaining claim for breach of contract. WCHR argued AUMC's failure to pay its financial obligations was a material breach of the Lease.  AUMC filed its brief in opposition on May 6, 2024. AUMC asserted WCHR was not entitled to judgment as WCHR failed to perform a condition precedent under the Lease.  Specifically, AUMC maintained because WCHR did not provide AUMC with a statement for the Common Area Charges ("CAM") pursuant

to Section 7B of the Lease, AUMC had no duty to pay its financial obligation.  WCHR filed a reply on May 13, 2024.

**{¶10}** Via Entry issued May 31, 2024, the trial court granted WCHR's motion for summary judgment. The trial court found, as a result of AUMC's failure to file an answer, AUMC admitted all the factual allegations in the complaint and waived any affirmative defenses. May 31, 2024 Entry Regarding Plaintiff's Motion for Summary Judgment at p. 3.  The trial court further found WCHR "properly pleaded facts sufficient to meet their burden as to the claim for Breach of Contract/Lease."  *Id*. at p. 4.  The trial court added, "Even if the Court were to reach the merits of the arguments and defenses raised in [AUMC's] opposition, [AUMC] has failed to provide any evidence or affidavits in support, as required under Civ. R. 56." *Id*.

**{¶11}** It is from this judgment entry AUMC appeals, raising the following assignments of error:


I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT ACCESS URGENT MEDICAL CARE, INC. LEAVE TO FILE AN ANSWER AND COUNTERCLAIM.

II. THE TRIAL COURT ERRED WHEN IT GRANTED THE SUMMARY JUDGMENT OF APPELLEE WALKERS CORNER HILL ROAD, LLC.

**{¶12}** In its first assignment of error, AUMC contends the trial court erred in denying its motion for leave to file an answer and counterclaim. We disagree.

**{¶13}** Civ. R. 12(A)(1) requires a defendant to "serve his answer within twenty-eight days after service of the summons and complaint upon him; if service of notice has been made by publication, he shall serve his answer within twenty-eight days after the completion of service by publication." Civ.R. 12. The Rules of Civil Procedure permit a party to move for an extension of the Civ.R. 12(A)(1) time period, even after the expiration of the twenty-eight days. Specifically, Civ.R. 6(B) provides:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
>
> Civ. R. 6(B).

**{¶14}** A Civ.R. 6(B)(2) motion is addressed to the sound discretion of the trial court and will not be disturbed upon appeal absent a showing of abuse of discretion. *Marion Production Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 271 (1988), citing *Miller v. Lint* (1980), 62 Ohio St.2d 209, 214 (1980). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d

217, 219 (1983). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶15} A trial court's discretion is limited, however, by the determination of whether the neglect or failure to file a timely answer is excusable or inexcusable. *Miller v. Lint*, 62 Ohio St.2d at 214. Likewise, a trial court's decision on whether a party's neglect was excusable may not be reversed absent an abuse of discretion. *M.R. Durant Electric, LLC v. Awesome87, LLC*, 2017-Ohio-4331, ¶ 35 (5th Dist.), citing *Grilli v. Smith*, 2012-Ohio-6146, ¶ 43 (5th Dist.).

{¶16} "In determining whether neglect is excusable or inexcusable, a trial court must consider all the surrounding facts and circumstances, but also must be mindful of the admonition that cases should be decided on their merits, where possible, rather than on procedural grounds." *Hillman v. Edwards*, 2009-Ohio-5087, ¶ 13, citing *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 272 (1988). "Inexcusable neglect under Civ.R. 6(B)(2) has been described as conduct that falls substantially below that which is reasonable under the circumstances." *Id*., citing *State ex rel. Weiss v. Indus. Comm.*, 65 Ohio St.3d 470, 473, (1992), citing *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 152 (1976). "In addition, despite the presence of special or unusual circumstances, excusable neglect does not exist if the party or his attorney could have controlled or guarded against the special or unusual circumstance that led to the untimely answer." *M.R. Durant Elec., LLC*, 2017-Ohio-4331 at 37, citing *Hillman v. Edwards*, at ¶ 10; and *Vanest v. Pillsbury Co.*, 124 Ohio App.3d 525, 536-537 (4th Dist. 1997).

**{¶17}** The trial court overruled AUMC's motion to dismiss via Entry filed May 17, 2023. Pursuant to Civ.R. 12(A)(2)(a), once the trial court denied AUMC's motion to dismiss, its answer was due "within fourteen (14) days after notice of the court's action." Thus, AUMC was required to file its answer on or before May 31, 2023. AUMC filed its motion for leave on July 17, 2023.

**{¶18}** In its motion for leave, AUMC maintained its failure to file a timely answer was based on excusable neglect as "[t]he parties [had] engaged since voluntarily [sic] dismissal of the forcible entry and detainer claim to resolve the damages claim in continuous settlement discussions." July 17, 2023 Motion of Defendant Access Urgent Medical Care of Pickerington, Inc. for Leave to File Answer and Counterclaim Instanter at p. 2. In its brief to this Court, AUMC also asserts its actions were excusable neglect, explaining, "the parties were actively involved in the case, exchanging settlement proposals and discussing settlement." Brief of Appellant at p. 21.

**{¶19}** We find the trial court did not abuse its discretion in finding no excusable neglect under these facts and circumstances. This Court has previously held, "[t]he mere fact that settlement talks were in progress does not constitute excusable neglect." *U.S. Bank, N. A. v. Hurr,* 2024-Ohio-5382, ¶ 25, (5th Dist.), citing *Wells Fargo Bank, N.A. v. Stevens*, 2014-Ohio-1399, ¶ 17 (7th Dist.) ("[I]t is not excusable neglect to fail to defend against a foreclosure action simply because loan renegotiation talks are in progress."). Further, "the Rules of Civil Procedure must still be followed regardless of actions taken outside the courthouse doors." *Deutsche Bank Natl. Tr. Co. v. Davis*, 2011-Ohio-5791, ¶ 24 (5th Dist.).

**{¶20}** Assuming, arguendo, a trial court could find excusable neglect where parties were engaged in settlement negotiations, the trial court's failure to make such a finding in the case sub judice was not an abuse of discretion.  AUMC was required to file its answer on or before *May 31, 2023*. Contrary to AUMC's contention, the parties were not in "continuous settlement discussions" following the filing of the Consent Judgment Entry on May 17, 2023. The record reveals Attorney Hilary DeSaussure, counsel for WCHR, sent an email to Attorney Percy Squire, counsel for AUMC, on *June 7, 2023*, inquiring whether AUMC was interested in resolving the matter prior to the July 20, 2023 bench trial. After a proposed settlement offer from Attorney Squire on June 14, 2023, followed by a counteroffer from Attorney DeSaussure on June 20, 2023, the settlement discussions ended on July 13, 2023, without resolution.

**{¶21}**  Further, even if the parties were actively engaged in settlement negotiations prior to May 31, 2023, we would not find the trial court abused its discretion in finding AUMC's failure to timely answer was not excusable neglect.  AUMC could have controlled or guarded against the untimely answer by filing for leave before the May 31, 2023 deadline.  See, *M.R. Durant Elec., LLC*, supra.

**{¶22}**  Based upon the foregoing, AUMC's first assignment of error is overruled.

II

**{¶23}** In its second assignment of error, AUMC asserts the trial court erred in granting summary judgment in favor of WCHR.  Specifically, AUMC argues WCHR failed to state a claim for damages under the Lease due to WCHR's failure to perform an express condition precedent to AUMC's obligation to additional rental payments.  AUMC further submits the WCHR failed to comply with the Statute of Conveyances because the

Lease was not notarized; therefore, WCHR's claim for damages is baseless under the Statute of Frauds. We disagree.

**{¶24}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C), which provides, in pertinent part:

> Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶25}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying

those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 1997-Ohio-259, *citing Dresher v. Burt*, 1996-Ohio-107.

{¶26} In its May 31, 2024 Entry Regarding Plaintiff's Motion for Summary Judgment, the trial court noted, when a defendant fails to file a timely answer, such failure "constitutes an admission the allegations in the complaint are true." (Citation omitted.) *Id.* at p. 3. The trial court explained:

> This is inline [sic] with Civ.R. 8(D), which states that "[a]verments in a pleading to which a responsive pleading is required. . . are admitted when not denied in the responsive pleading." Affirmative defenses which are not properly stated in a pleading under Civ.R. 8, 12, or 15, are waived and cannot be raised later in response to a Motion for Summary Judgment. * * * Those defenses which are not properly raised are waived.
>
> (Citations omitted.) *Id*.

{¶27} The trial court concluded, because AUMC failed to file a timely answer, it admitted all factual allegations in WCHR's complaint and waived any affirmative defenses. The trial court found WCHR "properly pleaded facts sufficient to meet their

burden as to the claim for Breach of Contract/Lease." *Id.* at p. 4. The trial court added, "Even if the Court were to reach the merits of the arguments and defenses raised in [AUMC's] opposition [to WCHR's motion for summary judgment], [AUMC] has failed to provide any evidence or affidavits in support, as required under Civ.R. 56. *Id.*

**{¶28}** We agree with the trial court. Having found in Assignment of Error I, supra, AUMC did not establish excusable neglect to warrant the trial court granting it leave to file a late answer, we find AUMC failed to file an answer. Accordingly, the allegations in WCHR's complaint were deemed admitted pursuant to Civ.R. 8(D).

**{¶29}** In its complaint, WCHR alleged (1) the Parties were subject to the Lease, a valid and enforceable contract, (2) that WCHR fulfilled its obligations under the Lease, (3) that AUMC materially breached the lease by failing to make its Rental Payments, and (4) that WCHR was damaged by AUMC's failure to make Rental Payments. Complaint, ¶¶ 15-20. Because each allegation was deemed admitted and, consequently, undisputed, we find the trial court properly found WCHR was entitled to summary judgment on its breach of contract claim.

**{¶30}** AUMC also waived any affirmative defenses pursuant to Civ.R. 8(C), which provides, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively * * * any other matter constituting an avoidance or affirmative defense." In order "[t]o preserve an affirmative defense, a party must assert it in at least one of the following ways: (1) by motion before pleading pursuant to Civ.R. 12(B); (2) affirmatively in a responsive pleading pursuant to Civ.R. 8(C); or (3) by amendment made under Civ.R. 15." (Citations omitted.) *OhioHealth Corp. v. Bishop*, 2024-Ohio-887, ¶ 17 (3d Dist.). AUMC did not assert any affirmative defenses in its motion to dismiss.

**{¶31}** AUMC raised the affirmative defenses for the first time in its opposition to WCHR's motion for summary judgment. "Affirmative defenses cannot be asserted for the first time in a memorandum opposing a summary judgment motion." (Citations omitted.) *Id*. at ¶ 18. Accordingly, we find AUMC waived its condition precedent and Statute of Frauds defenses.

**{¶32}** Assuming, arguendo, AUMC properly asserted its affirmative defenses, we find such defenses would not change the trial court's ultimate finding WCHR was entitled to summary judgment.

**{¶33}** AUMC contends it was not obligated to make any payments under the Lease because WCHR failed to perform a condition precedent. AUMC submits, because "[WCHR was] required to provide a statement to AUMC of [WCHR's] costs for the prior year within 15 days of the end of the preceding year," AUMC "had no duty to pay rent under the terms of the [Lease] until" WCHR complied with the "express condition precedent." Brief of Appellant at p. 16.

**{¶34}** A condition precedent is a condition that must be performed before the obligations in the contract become effective. (Citations omitted.) *JLP-Orange, LLC v. Tuller Square Northpointe, LLC*, 2024-Ohio-2236, ¶ 2. Essentially, a condition precedent requires that an act "must take place before a duty of performance of a promise arises. *Id.* If the condition is not fulfilled, the parties are excused from performing." *Id.* Whether a provision of a contract is a condition precedent is a question of the parties' intent. *Id.* Intent is ascertained by considering not only the language of the particular provision but also the language of the entire agreement and its subject matter. *Id.*

**{¶35}** Section VII(B) of the Original Lease, upon which AUMC relies, was superseded by Paragraph 8 of the Lease. Nonetheless, the relevant portions of Section VII of the Original Lease and Paragraph 8 of the Lease are the same and provide:

> If the estimated Common Area Charge ("CAM") for the prior calendar year is more than the actual CAM for the prior calendar year, Landlord shall either provide Tenant with a refund or apply any overpayment by Tenant against CAM due or next becoming due, provided if the Term expires before the determination of the overpayment, Landlord shall refund any overpayment to Tenant after first deducting the amount of Rent due. If the estimated CAM for the prior calendar year is less than the actual CAM for such prior year, Tenant shall pay Landlord, within 30 days after its receipt of the statement of CAM, any underpayment for the prior calendar year.

**{¶36}** We find the above cited provision did not create a condition which had to be satisfied before the agreement would be binding. There is nothing in the language of this provision which would excuse AUMC's contractual obligation to pay rent. Further, AUMC failed to present any evidence to support its position. Accordingly, even if AUMC did not waive this defense, the trial court did not err in finding this provision did not excuse AUMC's obligation to make rental payments.

**{¶37}** AUMC also maintains the Lease did not comply with the statute of conveyances and is unenforceable under the statute of frauds.

**{¶38}** "The purpose of the statute of frauds is to provide "greater assurance that the parties and the public can reliably know when * * * a transaction occurs[,]" because it has been reduced to a writing and is signed." *Sode v. Muskingum Cnty. Ct. of Common Pleas*, 2019-Ohio-4647, ¶ 9 (5th Dist.), citing *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 348 (8th Dist. 1984).

**{¶39}** Ohio's statute of frauds, which is codified in R.C. Chapter 1335, requires certain agreements to be in writing. R.C 1335.05 specifically states:

> No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

**{¶40}** Further, R.C. 1335.04 provides, "[n]o lease, estate, or interest * * * in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing." "Agreements that do not comply with the statute of frauds are unenforceable." *Qutifan v. Shafiq*, 2016-Ohio-4555, ¶ 13 (10th Dist.), citing *Hummel v. Hummel*, 133 Ohio St. 520 (1938). The purpose of the statute of frauds is to ensure transfers of real property are reliable and to discourage fraudulent claims. *Sode v. Muskingum County Court of Common Pleas*, 2019-Ohio-4647, ¶ 14 (5th Dist.), citing *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d at 348.

**{¶41}** Upon review of the record, we find the Original Lease, the Limited Warranty Deed transferring the Premises to WCHR, and the Lease were signed by the appropriate parties and properly notarized. The Lease and the Limited Warranty Deed were filed for record with the Fairfield County Recorder's Office. Accordingly, even if AUMC did not waive this defense, the Statute of Frauds was not violated and the Lease was enforceable.

**{¶42}** Further, even if the Lease was not properly notarized, the doctrine of part performance would "remove the agreement from the operation of the statute of conveyances." *Delfino v. Paul Davies Chevrolet, Inc.,* 2 Ohio St.2d 282, 287 (1965).

**{¶43}** R.C. 5301.01(A), the statute of conveyances, sets forth the legal requisites necessary to create a valid lease and provides:

> A deed, mortgage, land contract * * * or lease of any interest in real property and a memorandum of trust * * * shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement.

**{¶44}** The Ohio Supreme Court has held, in certain circumstances, the equitable doctrine of part performance may remove an instrument from the operation of the statute of conveyances or the statute of frauds. *Delfino*, 2 Ohio St.2d at 286-287. The doctrine is applied "in situations where it would be inequitable to permit the statute to operate and where the acts done sufficiently establish the alleged agreement to provide a safeguard against fraud in lieu of the statutory requirements." *Id.* For an agreement to be removed from the operation of the statute of conveyances, the part performance "must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his [or her] position to his [or her] detriment and make it impossible or impractical to place the parties *in statu quo.*" *Id.* "If the performance can reasonably be accounted for in any other manner or if the plaintiff has not altered his position in reliance on the agreement, the case remains within the operation of the statute." *Id.*

**{¶45}** We find the doctrine of part performance would remove the Lease from the operation of the statute of conveyances and the statute of frauds. The parties' performance of their respective obligations were unequivocal acts establishing their reliance on the Lease. The actions of the WCHR and AUMC were exclusively referable to the Lease with WCHR performing its obligations as landlord and AUMC performing its obligations as tenant. As a result, the parties changed their positions to their detriment. Consequently, it would be impossible to return the parties to the status quo after WCHR leased the Premises and AUMC made rental payments for two (2) years. We find AUMC was obligated to pay rental payments under the Lease.

**{¶46}** Based upon the foregoing, AUMC's second assignment of error is overruled.

**{¶47}** The judgment of the Fairfield County Court of Common Pleas is affirmed.

**{¶48}** For the reasons stated in our accompanying Opinion, the judgment of the Fairfield County Court of Common Pleas is affirmed. Costs to Appellant.

By: Hoffman, P.J.

King, J. and

Montgomery, J. concur